### SUSAN EVANS ET AL. V. S. S. ASHE.

#### Decided March 31, 1908.

**1.—Vendor and Vendee—Deferred Payment—Lien—Uncertain Amount.**

Where a deferred payment of the purchase money of land is to be made in "silver dollars of the coinage of the Republic of Mexico," such case is not analogous to cases in which the deferred payment is to be made in some commodity of indefinite and uncertain value, and therefore a vendor's lien would exist to secure the payment in Mexican dollars.

**2.—Same—Express Lien—Rescission.**

The rule that the vendor's lien will not be implied and enforced where the purchase price is payable in some commodity of uncertain value has no application when the vendor expressly reserves a lien to secure such payment. Where the lien is expressly reserved the legal title remains in the vendor, and upon failure of the vendee to perform his contract the vendor may rescind the sale and take possession of the land, even though the deferred payment is to be made in some commodity.

**3.—Same—Payment of Purchase Money—Presumption.**

Where a vendee, who had executed notes for part of the purchase money of land, abandons the purchased premises after a few months' occupancy, and permits the vendor and his heirs to take possession of the same shortly thereafter and remain in uninterrupted possession for nearly forty years, the burden of proof is upon the vendee or his heirs in a suit of trespass to try title by him or them against one holding under the vendor, in possession of the premises, to prove that the purchase-money notes had been paid, and hence that the vendee had the superior title. It would be otherwise as to the burden of proof if the vendee was in possession.

**4.—Deed—Description of Land.**

An administrator's deed described the land conveyed as 400 acres situated on a certain bayou; as a part of the farm of the decedent; and that a certain part of the tract had been previously sold to a certain party; held sufficient, when taken in connection with evidence that the testator owned only 400 acres on the bayou named, and of the sale referred to.

**5.—Trespass to Try Title—Prior Possession.**

Prior possession continued for only a few months, and then voluntarily abandoned, without any assertion of right or claim of ownership for thirty-six years, is not sufficient to make a *prima facie* case for a plaintiff in trespass to try title.

**6.—Same—Plaintiff Must Prove Title.**

Proof that an administrator's deed, under which defendant in trespass to try title claimed the land in controversy, was void, would not avail plaintiff,

as in such case the title would be in the estate. Plaintiff must recover on the strength of his own title and not on the weakness of defendant's.

**7.—Deed, Not Quitclaim.**

A deed which recites as the consideration the full value of the land con-veyed, which grants, bargains, sells and releases all of the right, title, interest and claim of the grantor, retains a vendor's lien to secure deferred payments, and contains a covenant of general warranty, is not a mere quitclaim deed.

**8.—Husband and Wife—Deed by Survivor—Confirmation by Heir—Rescission.**

Where a surviving husband conveyed the entire interest in a tract of land belonging to the community estate of himself and his deceased wife, reciting in the deed that the entire consideration was to be paid to him, and the only heir of the wife made the following endorsement on the deed: 'For and in consideration of the sum of one dollar to me in hand paid (by the vendee), I hereby convey and quitclaim all my right, title, interest and claim in and to the property described on the reverse side of this deed," the two instruments must be taken together as the joint deed of the parties for the consideration named, and a failure to pay any part of the purchase money would give the surviving husband the right to rescind the sale.

**9.—Vendor and Vendee—Cancellation—Presumption—Charge.**

In a suit of trespass to try title, the issue being whether or not a sale of land had been canceled for nonpayment of the purchase money, a charge upon the presumption of cancellation considered, and held warranted by the evidence, and not upon the weight of the evidence.

**10.—Same—Notice of Rescission.**

When the right to rescind for nonpayment of the purchase money of land is promptly exercised by the vendor, it is not necessary that he give formal notice to the vendee of his intention to rescind.

**11.—Estate—Conflicting Claims—Administrator's Sale.**

The fact that there may be conflicting claims to land at the time of its sale by an administrator would not affect the right of the administrator to sell.

**12.—Sale—Cancellation—Evidence.**

Upon an issue as to the cancellation of a sale of land, evidence considered, and held abundantly sufficient to support a finding in the affirmative.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*L. B. Moody, Chas. I. Evans,* and *Cockrell & Grey,* for appellants. —No vendor's lien arose from the transaction between E. S. Perkins and A. G. Scogin evidenced by the conveyance from the former to the latter, because the deferred consideration recited in the deed is the delivery by the vendee to the vendor of six thousand pieces of silver—"silver dollars of the coinage of the Republic of Mexico"— the value being uncertain; and where the consideration for a deed is the performance by the vendee of certain covenants, for the breach of which the remedy is an action at law sounding in damages, no vendor's lien exists to secure it. The legal title did not remain in Perkins, but passed to Scogin. Our own court has applied the rule by holding that where the consideration, other than money, is indefinite or of uncertain value, the vendor's lien does not exist. Miller v. Barber, 89 Texas, 264; 3 Pomeroy's Equity Jurisprudence, sec. 1251; Perry on Trusts, 235, p. 310; Dart on Vendors ch. 14;

3 Devlin on Deeds, sec. 1256; 1 White & Tudor's Leading cases, p. 470 and notes; Comstock v. Smith, 20 Mich., 338.

The title which was vested in A. G. Scogin by the conveyance from E. S. Perkins and H. E. Perkins could not lawfully be divested out of him in any other manner than by an instrument in writing signed by him; and as this was never done, the court should have instructed the jury to return a verdict for the plaintiffs. Sayles' Texas Civ. Stat., art. 2543; Ibid., art. 624; Dial v. Crain, 10 Texas, 444; Van Hook v. Simmons, 25 Texas Supp., 323; Thomas v. Groesbeck, 40 Texas, 530; Sanborn v. Murphy, 5 Texas Civ. App., 509; Lancaster v. Richardson, 13 Texas Civ. App., 682.

Neither the vendor, nor one claiming under him, can resist the demand of a prior vendee for possession of the land by showing merely that it appears from the deed to such prior vendee that a note or notes were given for a part of the purchase money; he must go further, and show that the notes are unpaid, and that he is the owner and holder of them. He must show that he holds both the legal title which remained in the vendor, and the purchase money notes. Neither one, without the other, will authorize him to hold the land as against the prior vendee or his heirs. Roy v. Clarke, 75 Texas, 28-31; Farmers' Loan, etc., Co. v. Beckley, 93 Texas, 272; McCamley v. Waterhouse, 80 Texas, 340; Polk v. Kyser, 21 Texas Civ. App., 680; Milligan v. Ewing, 64 Texas, 260; Coddington v. Wells, 59 Texas, 49; Moore v. Glass, 6 Texas Civ. App., 372.

It is well settled that if the legal title and the equitable lien are vested in the same person, he may recover possession of the land in an action of trespass to try title. Crafts v. Daugherty, 69 Texas, 480; Hale v. Baker, 60 Texas, 217; Stephens v. Matthews' Heirs, 69 Texas, 341-344.

It is well settled, that in a suit to recover the land from one holding under the vendee, by one holding under the vendor, the burden of proof is upon the plaintiff to show that the notes have not been paid. Polk v. Kyser, 21 Texas Civ. App., 680; Graham v. West, 26 S. W. Rep., 921.

After the lapse of thirty-six years since they became due, in the absence of any proof to the contrary, the law conclusively presumes that the notes recited in the deed from E. S. Perkins to A. G. Scogin have been paid. Johnson v. Lockhart, 40 S. W. Rep., 640; Blackwell v. Barnett, 52 Texas, 326; Lawson on Presumptive Evidence, p. 386; 22 Am. & Eng Enc. Law, p. 599; Evans v. Huffman, 5 N. J. Eq., 360; Downs v. Sooy, 28 N. J. Eq., 55; Cope v. Humphreys, 14 S. & R. (Pa.), 21; Webb v. Dean, 21 Pa. St., 31; Baent v. Kennicutt, 57 Mich., 268; s. c. 23, N. W. Rep., 808; King v. King, 90 Va., 177; s. c. 17, S. E. Rep., 894; Wannamaker v. Van Buskirk, 1 Saxt. Ch., (N. J.), 685; Peters' Appeal, 106 Pa. St., 340; 88 Am. Dec., 591, and note; Idler v. Borgmeyer, 65 Fed. Rep., 910; 13 C. C. A., 198; 19 Am. & Eng. Enc. Law, (2d edition), p. 149; 2 Warvelle on Vendors, sec. 661; Grantwicke v. Simpson, 2 Atkins R., 144; Coddington v. Wells, 59 Texas, 49-50; Milligan v. Ewing, 64 Texas, 260; Weems v. Masterson, 80 Texas, 49.

It appears from the face of the probate proceedings that there were conflicting claims to the land, between the estates of E. S. Perkins and the estate of A. G. Scogin, and the representatives of the latter were not parties to the proceedings; and the land was not sold to satisfy any lien upon the land claimed to be held by Perkins' estate. Wise ᴠ. O'Malley, 60 Texas, 588; Wadsworth v. Chick, 55 Texas, 241; Schmeltz v. Garey, 49 Texas, 49; Hanrick v. Gurley, 93 Texas, 472; Hanrick v. Gurley, 54 S. W. Rep., 353; Hanrick v. Gurley, 48 S. W. Rep., 998; Bradford v. Knowles, 86 Texas, 508; Miller v. Rogers, 49 Texas, 398; Stephenson v. Marsalis, 11 Texas Civ. App., 163; McCamant v. Roberts, 87 Texas, 244.

The land in controversy having never been inventoried as a part of the estate of E. S. Perkins by the Probate Court of Harris County, said probate court never acquired such jurisdiction over said land as to give it the power to order a sale thereof. Schmeltz v. Garey, 49 Texas, 49; Clift v. Willis, 74 Texas, 245; Jameson v. Dooley, 79 S. W. Rep., 81; Hanrick v. Gurley, 93 Texas, 472; Haney v. Brown, 46 S. W. Rep., 58; Bradford v. Knowles, 86 Texas, 508; Miller v. Rogers, 49 Texas, 398.

The court below erred in admitting in evidence, over the objections of plaintiff's counsel, the deed from A. S. Richardson, administrator of the estates of E. S., Ann W. and H. E. Perkins, to Geo. C. Davis and Stephen E. Spence, dated September 25, 1879, because said deed is void upon its face, for want of any description of any land, and it does not describe the land in controversy, and is therefore inadmissible for any purpose. Norris v. Hunt, 51 Texas, 612; Donnebaum v. Tinsley, 54 Texas, 364; Bitner v. New York & T. Land Co., 67 Texas, 342; Cleveland v. Sims, 69 Texas, 154; Coker v. Roberts, 71 Texas, 602; Harris v. Shafer, 86 Texas, 317; Wofford v. McKinna, 23 Texas, 44.

Conceding, for the sake of argument, that the charge is correct so far as relates to E. S. Perkins' half interest in the land, and that the legal title to that interest remained in E. S. Perkins, it is incorrect as to the other half interest which Henry E. Perkins had inherited from his mother, and no vendor's lien attached to it; for it is well settled that if the vendor, E. S. Perkins, had no valid right to, or interest in, the land which could pass to his grantee by his conveyance, there can be no vendor's lien to secure notes given for it. Houston v. Dickson, 66 Texas, 79; Lamb v. James, 87 Texas, 490; Bergman v. Blackwell, 23 S. W. Rep., 243; Curlie v. Texas Home Fire Ins. Co., 31 Texas Civ. App., 471.

That portion of the charge of the court which tells the jury that plaintiff is "required to show by a preponderance of the evidence, that the balance of the purchase money for the land, as recited in the deed from E. S. Perkins to A. G. Scogin, had in fact been paid," is erroneous, and is not the law of this case; because, after the lapse of thirty-six years since the last payment of the purchase price became due, and no demand for payment being shown, the law conclusively presumes that it has been paid; but, even if such presumption is not conclusive, it is so strong as to shift the burden of proof to the defendant; and because, to enable the defendant

to defeat the plaintiffs' suit, the burden is upon him to show that he is the owner of the legal title; that the purchase price notes have not been paid, and that he owns them. Lawson on Presumptive Evidence, pp. 391, 381; 22 Am. & Eng. Enc. Law, p. 599; Grantwick v. Simpson, 2 Atkyns, 144; Cope v. Humphreys, 14 S. & R. (Pa.), 21; Webb v. Dean, 21 Pa. St., 31; Baent v. Kennicutt, 57 Mich., 268; 23 N. W. Rep., 808; Idler v. Borgmeyer, 65 Fed. Rep., 910; 13 C. C. A., 198; Downs v. Sooy, 28 N. J. Eq., 55; Wanamaker v. Van Bushkirk, 1 Saxt. Ch. (N. J.), 685.

A voluntary surrender or cancellation of a deed will not operate as a transfer of title; and the title vested in A G. Scogin by the two deeds to him from E. S. Perkins and Henry E. Perkins, could not have been legally divested out of him by parol, nor otherwise than by an instrument in writing signed by him, as prescribed by our statute. Sayles' Texas Civil Stats., arts. 624 and 2543; Van Hook v. Simmons, 25 Texas Supp., 323; Thomas v. Groesbeck, 40 Texas, 530; Sanborn v. Murphy, 5 Texas Civ. App., 509; Dial v. Crain, 10 Texas, 444; Huffman v. Mulkey, 78 Texas, 556; Mason v. Bender, 16 Texas Ct. Rep., 1000.

The vendor can not rescind a contract for the sale of land until after the vendee is in default, and demand of payment and notice of an intention to rescind has been given him by the vendor; and where part of the purchase money has been paid there must be an offer to do equity by refunding it; and if the vendor has delayed a long time in exercising this right, he thereby waives it. Scarborough v. Arrant, 25 Texas, 136; Thomas v. Beaton, 25 Texas Supp., 318; Hild v. Linne, 45 Texas, 476; Reddin v. Smith, 65 Texas, 26; Green v. Chandler, 25 Texas, 158; Rogers v. Blum, 56 Texas, 6; Huffman v. Mulkey, 78 Texas, 560; Estes v. Browning, 11 Texas 237; Secrest v. Jones, 21 Texas, 132; Walker v. Emerson, 20 Texas, 709; Burkitt v. McDonald, 64 S. W. Rep., 694; Estell v. Cole, 62 Texas, 696; Kempner v. Heidenheimer, 65 Texas, 591; Tom v. Wollhoeffer, 61 Texas, 277; Green v. Chandler, 25 Texas, 158; Kauffman v. Brown, 83 Texas, 47.

The vendor of land has no power to rescind a sale of land for the non-payment of a part of the purchase money when due, unless he is, at the time of such attempted rescission, the owner and holder of the purchase money notes; and the burden of proving that fact rests upon him, or the person claiming under such rescission. Douglas v. Blount, 95 Texas, 396; Summerhill v. Hanner, 27 Texas, 227; White v. Cole, 87 Texas, 500; Farmers' Loan Co. v. Beckley, 93 Texas, 272; Russell v. Kirkbride, 62 Texas, 457; Hamblen v. Folts, 70 Texas, 136; Polk v. Kyser, 53 S. W. Rep., 90; Graham v. West, 26 S. W., 921; 7 Am. St. Rep., 95, and notes; Jackson v. Bradshaw, 57 S. W. Rep., 878; Robertson v. Parrish, 39 S. W. Rep., 646; Jackson v. Ivory, 30 S. W. Rep., 717; Crafts v. Daugherty, 69 Texas, 480; Foster v. Ross, 33 Texas Civ. App., 615.

*T. H. McGregor* and *Hume, Robinson & Hume,* for appellee.

REESE, Associate Justice.—Susan Evans, joined by her husband,

Chas. I. Evans, brings this suit in trespass to try title against S. S. Ashe to recover a certain tract of land situated in Harris County.

The plaintiffs' petition contains the usual allegations in a suit in trespass to try title. Defendant answered by plea of not guilty, general demurrer, and general denial and special pleas, setting up the defenses of limitation of three, five and ten years, and stale demand. The case was tried with a jury and a verdict and judgment rendered for defendant, from which plaintiffs appeal.

Mrs. Evans claims title as sole heir of A. G. Scogin, who died intestate in 1870, and whose estate was administered in Brazos County by his surviving widow. No question is made of Mrs. Evans' heirship. Her claim of title rested upon the following facts:

One Erastus S. Perkins held title to the land by regular chain of title from the sovereignty down to himself. The land was community property of Perkins and his wife, Eunice Perkins, who died in 1861, leaving surviving her one child, Henry E. Perkins, son of herself and Erastus Perkins. On April 2, 1867, Erastus S. Perkins executed to A. G. Scogin the following deed to the land in controversy:

"The State of Texas, ⎱
County of Harris. ⎰

"Know all men by these presents, that I, Erastus S. Perkins, of the County of Harris, in the State of Texas, in consideration of nine thousand dollars to me paid by A. G. Scogin of the County of Harris, in the State of Texas, have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release unto the said A. G. Scogin, his heirs and assigns, the following described land and premises lying and being situated in the State of Texas and County of Harris, to wit: All my right, title, interest and claim in and to all those parts of lots known as Nos. three (3) and six (6) on the Luke Moore league of land which lie north of Bray's bayou, or situated about four miles from the city of Houston and about one mile from the town of Harrisburg, and which said lots has been for the past two years known as Perkins' farm, and which was purchased by said Perkins from Robert Sharman and Ingham S. Roberts, the parts of lots three (3) and six (6) spoken of above and which are hereby conveyed is all of those which lie north of Bray's bayou, embracing the house and improvements, and which parts of lots contain about two hundred and fifty acres of land, more or less; those portions of said lots lying south of Bray's bayou are not conveyed; and a lien is hereby retained upon said land hereby conveyed to secure the payment of three promissory notes (bearing date with this deed and given in part payment therefor), each for the sum of two thousand silver dollars of the coinage of the Republic of Mexico, and executed by said Scogin to Erastus S. Perkins, and payable in one, two and three years, with ten percent interest from date, together with all and singular the rights, members, hereditaments and appurtenances to the same belonging or in any wise incident or appertaining.

"To have and to hold, all and singular, the premises above men-

tioned, unto the said A. G. Scogin, his heirs and assigns forever. And I do hereby bind myself, my heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said A. G. Scogin, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand, Houston, this day of April the second in the year A. D., 1867.

E. S. Perkins.

Witness:—
    Henry E. Perkins,
    James Masterson."

This instrument was proven for record and recorded the day of its date. At the same time, on the back of the foregoing deed, there was written and duly executed by Henry E. Perkins the following instrument:

"The State of Texas }
"County of Harris. }

"For and in consideration of the sum of one dollar to me in hand paid by said A. G. Scogin, I hereby convey and quitclaim all my right, title, interest and claim in and to the property described on the reverse side of this deed.

"Witness my hand this .... day of March, A. D., 1867.
Henry E. Perkins."

This instrument was acknowledged for record on the day of the date, and of the proof for record, of the former instrument, before the same officer, and on the same day was duly recorded, the record of the latter deed following immediately the record of the former.

Scogin went into possession of the land, making his residence thereon, upon the execution of the deed, and remained there until some time in December of the same year, when he removed with his family to Bryan in Brazos County where he bought a home and engaged in the business of construction of the H. & T. C. Railroad, and neither he nor any of his family ever returned to the land, except a casual visit which Mrs. Evans claimed to have made in April, 1868. It is claimed, however, by appellants that when Scogin left in December, 1867, he left a tenant on the premises who remained until April, 1868.

Appellants in offering their testimony in chief proved only the former possession of Scogin and the heirship of Mrs. Evans, relying upon such former possession for recovery, until rebutted by evidence of title in appellee, but upon evidence of such title having been offered, appellants introduced in evidence the deeds to Scogin herein referred to.

Appellee deraigns title from and under a sale and conveyance by the administrator of the estate of Erastus Perkins made in 1879 to George C. Davis and Stephen E. Spence. To avoid the effect of the deed from Erastus Perkins and from Henry E. Perkins, his son,

appellee contends, and introduced evidence to show, that Scogin, not desiring to keep or pay for the land, and being dissatisfied with his bargain, abandoned it in December after his purchase in April, 1867, and that the purchase money notes were never paid; that thereupon Erastus Perkins elected to rescind the trade, or it was agreed between them that it should be rescinded, and Perkins took possession, which he retained until his death in 1872; that it was inventoried by his administrator in 1875, and that the sale by his administrator conveyed good title.

It was conceded that one Holliday, who, as the surviving husband of one of the daughters of Scogin, owned an undivided interest of one-fifteenth in the land, if appellants' contentions are sound, was barred of any right of recovery by the statute of limitations. By reason of her coverture there was no bar of Mrs. Evans' right.

When appellee bought in 1879, no one was on the land. He immediately, or very soon after his purchase, began to make use of the land by cutting wood off of it, both for his own use and for sale; built cabins on it for wood-choppers, who lived on it until 1886, when he opened a field and built a log house, which was occupied by a tenant until 1892, when he built a frame house and other outhouses and improvements and enclosed the land. There appears to have been, if not continuous actual possession and occupancy by appellee since his purchase in 1879, at least such actual possession and occupancy for a larger portion of the time, and actual and continuous use and active assertion of ownership all of the time. No claim or assertion of ownership was ever made by appellants, or any one else claiming under Scogin, from the time of his leaving the premises in December, 1867, or at least not later than April, 1868, up to which time appellants claim Scogin had a tenant on the land, until about the time of the filing of this suit in December, 1904. No direct proof was made as to the payment or non-payment of the notes given by Scogin for the land. Proceeding now to the assignments of error.

By the first assignment appellants complain of the action of the trial court in refusing to instruct the jury to return a verdict for plaintiffs for fifteen-sixteenths of the land. The first proposition under this assignment is, that no vendor's lien arose from the transaction between E. S. Perkins and A. G. Scogin, because the deferred consideration recited in the deed, is the delivery of "six thousand silver dollars of the coinage of the Republic of Mexico." If it were material to the decision of this question, it is at least doubtful whether an equitable or implied vendor's lien would not have existed to secure the performance of the contract to pay "six thousand silver dollars of the coinage of the Republic of Mexico" as the purchase money of the land, in the absence of the express lien retained in Perkins' deed to Scogin. (Dissenting opinion of Stone, C. J., in Parrish v. Hastings, 102 Ala., 414; 48 Am. St. Rep., 50, citing authorities; Howe, Receiver v. Harding, 76 Texas, 17; Bradley v. Bosley, 1 Barb. Ch., 125; Deason v. Taylor, 53 Miss., 700.)

In a suit upon these notes or obligations given by Scogin, if there had been no express lien reserved, we can see no inherent

difficulty in establishing the value of Mexican silver dollars, and declaring and foreclosing the vendor's lien. We think a distinction can very well be made between such a case as is here presented and cases in which the consideration for the conveyance of land is, for instance, the support and maintenance of the vendor by the vendee, as in the case of Peters v. Tunell, (43 Minn., 473) and McCandlish v. Keen (13 Gratt. 615), or where the vendee was to build a house for the vendor on another tract, combined with other complicated stipulations, as in Hiscock v. Norton (42 Mich., 321), or even where the consideration is the delivery of so many pounds of cotton, no particular grade of cotton being stipulated, as in Harris v. Hanie (37 Ark., 348). In this case it is said that the implied lien would not exist where there is "the introduction of such schemes by the parties, and their blending of bargainings in such way as to disable the court from ascertaining and defining with any certainty the present amount in money, or identifying the charge sought to be enforced." But it is not necessary, we think, to decide whether, in the present case, if no lien had been expressly reserved, the implied vendor's lien would exist.

In all of the cases cited by appellants in support of the proposition advanced by them there is implied a clear distinction of cases where an express lien is retained. The court says in Harris v. Hanie, *supra,* "Whilst courts of equity will create the lien for amounts which are liquidated, they decline the double task of liquidating the damages and then declaring a lien in favor of parties who have not reserved one in the deed." In the case of Whiteley v. Central Trust Co., (76 Fed. Rep., 74), cited by appellants, the consideration was held to be of too complicated a nature to afford a basis of the implied lien, but the court quotes from Dayton, X. & B. Railroad Co. v. Lewton, (20 Ohio St., 401) : "It may be that this equity of the defendant in error is not, technically, what is commonly called a 'vendor's lien' inasmuch as the legal title has not been conveyed by him to the purchaser. It is, however, at least as strong a hold upon the property sold as the lien of a vendor after title conveyed; for here not only is an equity retained by the vendor in the property sold, to the extent of the unpaid purchase money, but the legal title is also retained by him as additional security. It can not be said in this case that, 'from the nature and objects of this sale, the vendor did not intend to rely upon the thing sold as security for his payment.' Retaining the legal title is very strong, if not conclusive, evidence that he did intend to rely upon it as security. The presumption, however, in all cases, even where the vendor conveys the legal title, is that he intends to rely upon the property sold as security. And before this abandonment or waiver of such security can be found, it must be shown that he did not intend to rely upon it," and distinguishing this case from the one before it, the court adds: "From the fact that the vendor had retained the legal title it is very clear that the Ohio Court did not have the question now presented in this case."

Appellants contend that, although the contract lien may be enforced as a lien, inasmuch as from the nature of the consideration

the implied vendor's lien would not exist, in the absence of the express lien reserved, the superior legal title does not remain in the vendor until the purchase money is paid. This contention is not sound. Whether the purchase money be payable in Mexican silver dollars, or other commodity, the express reservation of the vendor's lien upon the land to secure such payment leaves the superior legal title in the vendor until the purchase price is discharged, and all the consequences flowing from, and inhering in, a sale for legal tender money, inhere in and flow from, this contract wherein the purchase money is six thousand silver dollars of the coinage of the Republic of Mexico. What these consequences are has been settled by a long line of decisions in this State. In such case, the vendor, upon failure to pay the purchase money, or discharge the obligation, the consideration of the sale, may rescind the sale, and take possession, of the land, or sell it to another.

Such, we think, was the nature of the contract here. It was not necessary, as stated by appellants in their second proposition, that an instrument of writing should have been signed by Scogin to divest his title. He had no title except one conditioned upon the discharge of his obligation for the purchase money. It would be a waste of time to multiply authority upon this proposition. Farmers' Loan & Trust Co. v. Beckley, 93 Texas, 274; Burgess v. Millican, 50 Texas, 401; Hale v. Baker, 60 Texas, 217. This right of rescission can only be exercised when the purchase money, or a part thereof, is unpaid, and the notes are held by the vendor or by some one to whom he has transferred them together with his superior legal title.

In this connection, by the third proposition under the first assignment of error, the point is presented that there was no proof that the notes were unpaid, and that in the absence of such evidence the presumption obtains, after the lapse of such a length of time, that they have been paid. It is further contended by the appellants, under their third assignment of error, that the court erred in charging the jury that the burden of proof was upon appellants to show that the purchase money notes were paid. If Perkins was asserting his right to recover the land upon his superior title against Scogin, who had remained in possession, there is no question that the presumption would be as contended by appellants; but if, as the evidence tended to show, and was sufficient to show, Scogin abandoned the premises after a few months occupancy, and no assertion of title or claim of ownership was ever afterwards made by him or any one holding or claiming title under him, for nearly forty years, and Perkins, shortly after such abandonment went into possession, and those claiming under him have been ever since in possession, claiming such title as could only exist, upon the ground of a rescission of the sale by Perkins, in a suit by Scogin's heirs, after such lapse of time, against the appellee claiming title under Perkins, and himself in possession under such title for twenty-five years before the assertion of such claim, we think that the presumption shifted from appellee to appellants. The burden of showing that the purchase money was not paid was sufficiently met by the presumption arising from the long exercise of such rights as could properly

exist only upon the non-payment of the purchase money, and the burden would be upon appellants to rebut such presumption. Otherwise a vendee could allow the vendor to take possession, the purchase money being unpaid, make no movement that would indicate that his right to do so was denied or questioned, and after time had destroyed all evidence as to this fact, successfully assert his title. The presumption of payment where the vendee has remained in possession for a long time, without any assertion of his superior title by the vendor, rests upon the failure on the part of the vendor to assert his claim against the vendee in possession. For a like reason, the failure of the vendee to assert his claim for such a length of time against the vendor and those claiming under him in possession, should carry a presumption of non-payment. In either case the presumption is against the party who has by his silence and inaction acquiesced in the assertion of the hostile claim. There is nothing in the decisions cited by appellants holding that after a long lapse of time it will be presumed that the purchase money has been paid, inconsistent with the conclusions here announced. They are all cases in which the vendor sues the vendee in possession.

Erastus Perkins, by his will executed in 1868, left all of his estate to Ann W. Perkins, daughter of his son, Henry E. Perkins. Henry E. Perkins, by his will executed in 1872, left all of his estate to Ann W. Perkins, his wife. He died July 20, 1873. Ann W. Perkins died May 23, 1873, leaving a will by which all of her estate was devised to her husband, Henry E. Perkins. On September 1, 1873, A. S. Richardson was appointed administrator of the three estates. The property in controversy was not entered upon the original inventory, but in December, 1875, the administrator submitted what he styles an annual report in which he reports, as not having been theretofore mentioned, as the property of the estate of E. S. Perkins, "a tract of land part of the Perkins farm on Bray's bayou, in Harris County, at one time sold to A. G. Scogin, now deceased, which sale was subsequently canceled, etc., say two hundred and fifty acres, part of the Luke Moore league in Harris County, valued at ten dollars per acre." The land was regularly appraised by appraisers at that price. There appeared in the original inventory a tract of one hundred and fifty-four acres of land on the south side of Bray's bayou, part of Luke Moore and Jacob Thomas surveys, appraised at $1500. In February, 1879, the heirs of Erastus S. Perkins, who were also the sole heirs of Ann W. and Henry E. Perkins, petitioned the Probate Court for an order to the administrator to sell all of the property of said estates for the payment of debts, which was done. The administrator reported the sale, among other property, of "one hundred and fifty-four acres of the Luke Moore and Jacob Thomas tract" at five cents per acre, which sale was disapproved by the court, and the administrator ordered to resell on the first Tuesday in September, 1879. On the 26th of July, 1879, the administrator was ordered to sell on the first Tuesday in September, 1879, the two hundred and fifty acres, "part of the Perkins farm on Bray's bayou, Harris County, in the lower half of the Luke Moore league." On September 15, 1879, the administrator reported

the sale of "four hundred acres, part of the Luke Moore and Jacob Thomas leagues," which sale was duly approved on September 25, 1879. This four hundred acres must be taken to embrace the two hundred and fifty acres ordered to be sold July 26, and the one hundred and fifty-four acres ordered to be resold, both sales being ordered to be made on the same day, the two tracts constituting one body of land. Under these orders the administrator sold and conveyed to George C. Davis and Stephen E. Spence the said four hundred acres, which included the land in controversy.

Appellants challenge this sale and the conveyances thereunder as void on the grounds that the administrator had no jurisdiction to sell, the property never having been inventoried, that there was no proper order of sale, and that the deed is void for want of description. None of these objections are tenable. The reference to the location of the land on Bray's bayou, that it was a part of the Perkins farm, and, as to the two hundred and fifty acres, that it was the tract previously sold to Scogin, with evidence that Perkins only owned this four hundred acres on Bray's bayou, part of it lying north and part south of the bayou, was, we think, such description as would serve to identify the land. (Herman v. Likens, 90 Texas, 448.)

If, however, the sale was void, the effect would be that such title as was attempted to be conveyed would still be in the estate and heirs of Perkins, and would not assist appellants in their right of recovery, unless they were entitled to recover under the prior possession of Scogin. Under the facts stated as to this prior possession, continued for only a few months and then abandoned, without any assertion of right or claim of ownership for thirty-six years, we do not think that appellants were entitled to recover upon it. This leaves them with the right to recover only upon the strength of their title under the deed to Scogin, and if under the evidence the title asserted by Perkins and his administrator is superior to such title of appellants, they can not recover whether or not the administrator's deed conveyed good title. The second assignment of error presenting objections to the introduction of the administrator's deed in evidence is overruled.

The third assignment of error assails the charge of the court that "the instrument, or two instruments upon the same sheet, one signed by E. S. Perkins and witnessed by Henry E. Perkins, the other signed by Henry Perkins, was or were in law a deed from Erastus Perkins to A. G. Scogin to the tract of land of which the land in controversy is a part, and the legal effect of the same was, by reason of a retention of a lien thereon for the unpaid purchase money, to leave the superior title in E. S. Perkins, and to vest A. G. Scogin with such character of title as that, in order to enable plaintiff, his heir, to recover the land upon it in this action, she is required to show by a preponderance of the evidence that the balance of the purchase money has, in fact, been paid, as the title did not vest in Scogin or his heirs, until the purchase money was paid." The objections to the latter part of this charge, as to the burden of proof upon the

issue of payment or non-payment of the purchase money, have been heretofore disposed of.

It is contended by appellants, that the effect of the quitclaim deed of Henry Perkins, at least, was to vest in Scogin the absolute title to one-half of the land, the land being community property of Erastus Perkins and his wife, mother of Henry Perkins, who was the only child. We have seen that the property was in fact community property, that Mrs. Perkins died in 1861, leaving Henry Perkins sole issue of the marriage. The deed of E. S. Perkins was not a mere quitclaim, but a conveyance of the land, (Garrett v. Christopher, 74 Texas, 453), and the lien was reserved upon the entire premises to secure the purchase money due for the entire premises. If appellants' contention be true, E. S. Perkins sold and conveyed only his half interest for nine thousand dollars, and H. E. Perkins conveyed his half for the nominal consideration of one dollar. The deed of H. E. Perkins was executed on the back of the deed from E. S. Perkins, at the same time, acknowledged at the same time and recorded at the same time. E. S. Perkins having conveyed the entire estate, so far as he could do so, the instrument executed by H. E. Perkins must be taken as only confirmatory of his father's deed, and the two instruments taken together as the joint deed of the parties for the consideration named, which was to be paid to E. S. Perkins, and for which a lien on the entire premises was retained in his favor.

Mrs. Perkins died in 1861, the war intervened, by reason of which business of all kinds was interrupted, so that in 1867, when this deed was executed, it is reasonable to conclude that there existed a necessity for the sale of this land for the payment of community debts. That Scogin understood that his failure to pay the purchase money authorized a rescission of the sale as to the entire tract, is abundantly shown by his abandonment of the premises and by the entire failure afterwards, of either him or his heirs, to assert any title to the whole or any part of the land. According to appellants' contention he had an absolute and unconditional title to one-half of the land upon which he owed nothing, and upon which there was no lien. It is clear that Scogin himself did not so understand it. The third assignment is overruled.

There was no error in that portion of the charge set out in the fourth assignment. The charge is as follows: "The defendant claims that under the circumstances of the case, a cancellation of the contract or purchase may be presumed. Upon this point you are instructed, that if you believe that such cancellation of the contract is consistent with the other facts and circumstances in evidence, you will be authorized to presume a cancellation, and you are not necessarily restricted to what may fairly be supposed to have occurred, but rather to what may have occurred and what seems requisite to quiet the title of those in possession of the land. The presumption of cancellation, if such you presume, is not conclusive, but is *prima facie* and subject to be rebutted by other facts and circumstances in evidence.

"If there was a cancellation of the trade, it was not necessary

that the same should have been reduced to writing, as the same, if there was such, could have been made by verbal agreement between Perkins and Scogin, or between Perkins' administrator and Scogin, or between Perkins' administrator and Scogin's administrator."

It is not an unreasonable presumption from the facts in the record that the rescission of the sale and taking possession of the land by Perkins was agreed to or acquiesced in by Scogin and by those claiming under him including his widow who administered upon his estate. It appears, in addition to the other evidence heretofore referred to, that this land was never inventoried as part of his estate.

What has been said disposes of the fifth assignment of error. Under the circumstances herein detailed, in a suit by the heir of Scogin against appellee in possession, claiming under Perkins, after this lapse of time, the burden would be upon appellants to show that the notes were paid, or that Perkins had transferred them before he exercised the right of rescission. Long acquiescence in this act of rescission, until everybody connected with the transaction or likely to know anything about it was dead, authorizes such a presumption that the title claimed and possession exercised by Perkins and acquiesced in by Scogin and his administrator and heirs, was a rightful title and possession. It was not necessary to show that Perkins gave Scogin notice of his right to rescind which was promptly exercised, after the occasion therefore arose.

The charge complained of in the sixth assignment of error, is, in substance, identical with a charge approved by the Court of Civil Appeals in Staley v. Stone, (92 S. W. Rep., 1020), in which a writ of error was denied by the Supreme Court. The charge is as follows:

"You will consider the question whether the trade for the land was canceled, and his right thereunder surrendered by Scogin, and in passing upon this question you will take into consideration the actions of Scogin, his declaration, if any you believe he made, the time when he left the land, the lapse of time that has passed since that time, his ability or inability to pay, as the same is revealed by the evidence, the assertion or non-assertion of right by him or those claiming under him, the assertion of right, if any, by others claiming under Perkins, the action of Perkins's administrator in inventorying the land as a part of his estate, and the sale of it by the administrator, and all the facts and circumstances which will throw light upon the question; and if you believe from all the facts and circumstances that the trade was canceled, or that Scogin abandoned the property, you will find for the defendant."

The charge was not upon the weight of the evidence and, taken in connection with the two preceding paragraphs, gave the jury, we think, the correct rules of law, applicable to the facts, by which to determine the issue of cancellation or rescission.

What has been said disposes also of the remaining assignments of error, which are without merit.

We find no error in the judgment and it is affirmed.

ON MOTION TO CORRECT FINDINGS OF FACTS AND TO PASS UPON ISSUES.

In the opinion in this case it is stated that the property in question was not inventoried by the administratrix of Scogin's estate. We desire to correct this finding. The evidence does not show whether or not it was so inventoried.

Appellants ask us to correct the finding of fact, as stated by them in this motion, "that Perkins only owned this four hundred acres of land on Bray's bayou, part of it lying north and part of it south of the bayou." We did not find this, as a fact, but merely stated that there was evidence showing the fact, and so there is. The inventory of the estates of H. E., E. S. and A. W. Perkins, supported by the affidavit of the administrator that it contains a list of all of his property, embraces one hundred and fifty-four acres of the Luke Moore league on Bray's bayou, and a supplemental inventory embraces two hundred and fifty acres of the league. No other land on Bray's bayou belonging to the estate is shown. This at least, is evidence that Perkins owned no other, and this evidence, not controverted, would authorize the finding that it was a fact.

In deference to the request of counsel we will pass upon certain propositions under his assignments of error, which we omitted to do as unnecessary to a decision of the case.

The fact that there were conflicting claims to the land, if in fact there were such conflicting claims, at the time of the sale by the administrator of Perkins, did not affect the right of the administrator to sell.

Whether the death of Scogin revoked the right of Perkins to rescind is not, we think, material. The evidence shows conclusively to our minds a voluntary abandonment of the land and agreement to rescind the sale, on the part of Scogin.

The third assignment of error complains of a charge of the court in the latter part of which the jury are told that appellants are required to show by a preponderance of the evidence that the balance of the purchase money was paid. The proposition is stated under this assignment that, "A charge which is conflicting and contradictory in its different parts, is calculated to mislead the jury and is erroneous." In support of the proposition, reference is made to the following paragraph of the charge, following that objected to:

"What the facts are as to the question of payment, and as to the question of cancellation of the trade, or abandonment of the property concerning which you will be hereafter instructed, is for you to say as you are the sole and exclusive judges of the facts proved, the weight of the evidence and the credibility of the witnesses. The burden of proof upon these points is upon the defendants."

This charge follows immediately the instruction, that, upon the matter of payment, "the burden of proof was upon the plaintiff, as the title did not vest in Scogin until the purchase money was paid." It is clear to us that the court intended by that portion of the charge claimed to be in conflict with this instruction, that upon the facts of cancellation or abandonment the burden of proof was upon the defendants, and that the jury must have so understood.

However, if appellants are right in their contention we do not think that the error was or could have been prejudicial to them. Upon the question of payment or nonpayment by Scogin of the purchase money there was no direct evidence. It is unreasonable to suppose that he paid it or any part of it, except the cash recited in the deed, before his death, as the first note was not then due. That his administratrix or his heirs should have paid it afterwards and then, after such payment, failed for thirty years and more to assert any claim to the land, during a great part of which time it was actually occupied by persons claiming under Perkins, and during all of which time there was active, open and notorious assertion of the hostile claim, is not reasonably conceivable. Every circumstance leads irresistibly to the conclusion that the balance of the purchase money was never paid. So, whether the burden of proof upon this point was placed upon plaintiff or defendant was immaterial, and the charges referred to, if in fact contradictory, and so understood by the jury, could not have prejudiced appellants.

*Affirmed.*

Writ of error refused.