## ROWAN et al. v. BARFOOT et al.
### No. 11039.

Court of Civil Appeals of Texas. Dallas. Nov. 12, 1932.

Rehearing Denied Dec. 10, 1932.

Wynne & Wynne and Jack T. Life, all of Athens, for appellants.

Bishop & Holland, of Athens, for appellees.

VAUGHAN, J.

On August 19, 1930, Elva Barfoot, a feme sole, Maude Barfoot, joined pro forma by her husband, Ed Barfoot, Blanche Barfoot, joined pro forma by her husband, John Barfoot, H. P. Brown, and E. C. Brown, appellees (plaintiffs below), filed in the trial court this suit in trespass to try title to recover 60 acres of land, part of the J. S. Reid and M. J. McCrary surveys in Henderson county, Tex., as described in appellee's petition, against Sam Rowan and wife, Stella Rowan, Erwin Barber and wife, Ellen Barber, J. W. Cumby and wife, Mrs. Ollie Cumby, appellants (defendants below).

Appellants filed their original answer on January 13, 1931, containing a general demurrer, plea of not guilty, and further pleaded the three, five, ten, and twenty-five year statute of limitation as a bar to appellees' alleged cause of action. A jury not being demanded, the cause was tried before the court on February 2, 1931, on which date the court took the case under advisement, and thereafter, on February 21, 1931, rendered judgment for appellees and against appellants, for title and possession of the premises in question. From this judgment, appellants duly perfected this appeal.

To sustain this judgment, the evidence must be sufficient to support the conclusions therefrom that (a) there was a complete rescission between A. J. Brown and F. L. Mosley of the conveyance of the 60 acres of land involved in this suit by A. J. Brown to W. H. Knight, on September 28, 1899, and by W. H. Knight and wife to F. L. Mosley, on July 31, 1901; and (b) that appellants failed to establish that they had acquired title to said tract of land, either by the three, five, ten, or twenty-five year statute of limitation (Rev. St. 1925, arts. 5507, 5509, 5510, 5519).

The following facts were established by undisputed evidence, viz.: That A. J. Brown and wife, Mary Brown, acquired a good and sufficient legal title through the deed executed by John G. Ammons et al. to A. J. Brown, dated October 19, 1883; that said tract of land became and was the community property of the said A. J. Brown and Mary Brown at the date of her death on or about the ——— day of ———, A. D. 1891; that appellees and one Guy M. Brown are the children, grandchildren, and heirs at law of the said

A. J. Brown and wife, Mary Brown; that said Guy M. Brown, on March 8, 1930, conveyed his interest in said 60 acres to appellee Elva Barfoot; that several years after the death of said Mary Brown, A. J. Brown, on September 28, 1899, assumed to convey the entire 60 acres of land to W. H. Knight and wife, Emma Knight, but as a matter of fact only conveyed a one-half interest thereof; that appellees and one Guy M. Brown, as the children and heirs at law of the said Mary Brown, deceased, inherited, under the statute of descent and distribution, an undivided one-half interest in and to said 60 acres of land; that said A. J. Brown died the ——— day of September, A. D. 1906.

Appellants introduced the following deed of conveyance, viz.: Deed from said F. L. Mosley and wife, Alice Mosley, to appellants, dated April 3, 1930, conveying the involved premises. The deed from A. J. Brown to W. H. Knight and wife, purporting to convey the entire 60 acres, recites as the consideration therefor seven notes of $50 each, executed by W. H. Knight and wife, payable to A. J. Brown, and retained the vendor's lien on the involved premises to secure the payment of said notes; that in the deed of date July 31, 1901, by Knight and wife to F. L. Mosley, conveying the involved premises, the consideration is stated as follows: The payment of $125 cash and the assumption of the payment of five of the notes executed by W. H. Knight and wife, Emma Knight. This deed also expressly retained the vendor's lien to secure payment of these notes. Neither of said deeds was ever placed of record.

■ The following facts necessary to have been found by the court in favor of appellees in order to sustain the judgment rendered in their favor were controverted, but, there being evidence sufficient to sustain the findings of the court, the facts so found are approved by this court, viz.: That a few months after the execution of the deed by Knight and wife to F. L. Mosley, A. J. Brown elected to rescind the executory sale of said 60 acres made by him to W. H. Knight and wife by deed of date September 28, 1899, as well as the sale thereof made by W. H. Knight and wife to F. L. Mosley, because of the failure to pay to him (Brown) certain past-due vendor's lien notes executed by W. H. Knight and wife as a part of the consideration for the conveyance by said Brown of the involved premises to said Knight and wife; that said rescission was completed, in that said Brown repaid to said Mosley $125, which was the amount Mosley had paid to Knight, which transaction also involved the cancellation of the unpaid vendor's lien notes then remaining with said Brown, and the surrender of the possession of said tract of land by Mosley to Brown, and the delivery to Brown by Mosley of the two recorded deeds, being the deeds

executed by Brown to Knight, and by Knight to Mosley; that this rescission was consummated by verbal agreement; that immediately after said rescission Brown and his children, appellees herein, resumed possession of said 60 acres of land, cleared and put in cultivation a portion thereof, and planted an orchard thereon; that since said transaction appellees have held possession, either in person or by tenant, of said 60 acres of land, up to a short time prior to the filing of this suit, viz. August 19, 1931, when appellants denied tenancy and asserted claim to the land.

In reference to the possession of said tract of land under the contract of tenancy, Mrs. Ollie Cumby, one of the appellants, testified as follows: "I know where the 60 acres of land is located that is involved in this suit. Ed Brown worked some of this land while he was there. He lived with us from 1912, 1913 and 1914. I remember the occasion of his leaving after he had been there a year or two. When he was talking of leaving we had a conversation about the land. I think it was about the time he was leaving. I agreed to pay the taxes on the land for the use of the land for pasturage over there. I recognized it as Uncle Jeff Brown's place. I did not discuss it with Ed Brown during the holidays of 1929. No, I did not tell him when I talked with him about it that I claimed any interest in it then, nor I didn't tell him I didn't, just to say I do or I don't. Yes, sir, I told him that I had been living faithful to our agreement to keep the taxes paid up for the use of it. Yes sir, there was a partition of the Henry Brown estate in 1915. Yes sir, we partitioned all the property he had, except one 14 acre tract, me and the Hobbs children have that in common. No sir, we didn't mention in the partition deed anything about the 60 acres of land in controversy here. The reason we didn't was because we didn't have the deed to get the description. I think Uncle Jeff Brown came back there a little before 1900—I am not positive just what year he did come back. Yes sir, he lived with my father. No sir, I do not know that he managed and controlled this 60 acres of land over there up until his death. No sir, I do not know that Uncle Jeff Brown looked after that all the time."

Unless by virtue of the transaction had between F. L. Mosley and A. J. Brown, a rescission of the trade made in reference to the involved premises by and between said Brown and Mosley was consummated, appellants were entitled to recover said land under the deed from Mosley and wife to Mrs. Ollie Cumby, Mrs. Ellen Barber, and Mrs. Stella Brown, of date April 3, 1930, purporting to convey the land in question. The superior title to the land remained in A. J. Brown under the expressed reservation of the

832

vendor lien in his deed, until the purchase-money notes executed by Knight were paid. When Knight and wife executed the deed to Mosley, he, as a part of the consideration to be paid by him for the 60-acre tract, assumed to pay five of the seven notes executed by Knight payable to A. J. Brown, and, in the deed to Mosley, the vendor's lien was retained on said land to secure the payment of said five notes. It is not contended that A. J. Brown was not the owner and holder of four of said five notes when his "rescission" transaction was had with said Mosley, or that said notes had been paid, or were not settled in said rescission transaction. As to this transaction, F. L. Mosley testified in part as follows: "I owned the land three or four months * * * this land was not paid for * * * I did not finish paying Uncle Jeff Brown for the place after I got it. Uncle Jeff Brown wanted the place back and I decided that I did not want the place, and I just told him if he would pay me my money back I would turn it back to him, and that is what I done. * * * I turned over to him the deed I made Knight and the one Bill Knight made me, and the note that I had taken up * * * and he paid me the money."

The partition deed between the heirs of H. W. Brown, deceased, appellants, does not purport to partition this property. This deed was executed by appellants on November 22, 1913, said A. J. Brown having died on the ——— day of September, 1906. The deed executed by F. L. Mosley and wife, Alice Mosley, on April 3, 1930, to appellants, which purports to convey the involved premises, did not convey any title thereto to said parties, this because by the rescission consummated by the said Mosley and A. J. Brown all right to acquire title to said land and interest therein theretofore existing in said Mosley became reinvested in said Brown and his children, appellees. Mosley was not in possession of the property when the deed of April 3, 1931, was executed by him to appellants, nor did he have possession of the deeds from A. J. Brown to W. H. Knight and from Knight and wife to Mosley, same having been delivered by him into the possession of A. J. Brown at the time of said rescission transaction. We are of the opinion that the following holding in the case of Johnson et al. v. Smith et al., 115 Tex. 193, 280 S. W. 158, 160, by our Supreme Court, is sufficient to sustain the judgment of the trial court on this phase of the case: "Under the express reservation of the vendor's lien in Sherrod's deed, the superior title to the land remained in Sherrod until the purchase-money notes were paid. Masterson v. Cohen, 46 Tex. 523, 524; Hamblen v. Folts, 70 Tex. 135, 7 S. W. 834. No title to nor interest in the land was or could be acquired by Elymas Johnson save such as was conditioned on payment of the notes. Howard v. Davis, 6 Tex. 182; Roosevelt v. Davis, 49 Tex. 472; Evans v. Ashe, 50 Tex. Civ. App. 63 [108 S. W. 398, 1190]. The contract of sale could have been rescinded by parol agreement between Sherrod and Elymas Johnson or by Sherrod alone on Elymas Johnson's default to pay the notes or repudiation of his obligation to pay same. Thompson v. Robinson, 93 Tex. 170, 54 S. W. 243, 77 Am. St. Rep. 843; Davis v. Cox (Tex. Com. App.) 239 S. W. 918." To the same effect is the opinion in Davis et al. v. Cox (Tex. Com. App.) 239 S. W. 917.

We have not been able to find in the record any fact established conclusively by the evidence which would estop appellees from claiming, as against the deed executed by Mosley to appellants, the absolute title to the involved land; that was re-established by said rescission long prior to the execution of the deed by Mosley to appellants. The evidence being sufficient to sustain the judgment of the court, based upon a rescission having been consummated, as hereinabove stated, and appellants having failed to establish title to the involved land, either under the three, five, ten, or twenty-five year statute of limitation, we are of the opinion that this cause should be, and the same is, affirmed.

Affirmed.