JAMES A. ROOSEVELT, ROBERT HODGE, AND L. D. JAMES *v.* GEORGE W. DAVIS.

1. VENDOR AND VENDEE.—A deed containing an express reservation of a lien on land conveyed for the payment of the purchase-money, has the effect to make the perfection of the title dependent upon the payment of the purchase-money. Until such payment, the superior title to the land remains in the vendor.

2. NOTICE OF UNPAID PURCHASE-MONEY.—The record of such a deed, which in its recitals gave the particulars as to the purchase-money notes, their respective amounts, time of maturity, &c., was notice of the condition of the title to the land affecting subsequent purchasers.

3. LIMITATION.—A purchaser by quit-claim deed before the maturity

of the purchase-money notes, or of any of them, will be considered as holding in subordination to the superior title, dependent upon the payment of the purchase-money, and not adversely to it. While that relation existed between the party in possession and the holder of the purchase-money notes, limitation would not run in favor of such possession.

4. LIMITATION, WHEN IT BEGINS TO RUN.—A sale by the holder of such superior title (the original vendor) to another, would be a repudiation of such relation, and from which limitation would run.

5. SAME.—Until such repudiation by one of the parties, and made known to the others, limitation would not run against the notes, or by three, five, or ten years' possession of the land, so as to defeat the right of the original vendor to recover the land under his superior title.

6. INTERVENOR.—That an intervenor may show title to an undivided interest in the land sued for in trespass to try title, does not affect the right of the plaintiff to recover who shows title to the remaining interest, as against defendant, who is a mere trespasser.

APPEAL from Ellis.    Tried below before the Hon. H. Barksdale.

James A. Roosevelt brought suit on the 13th day of December, 1871, in the ordinary form of an action of trespass to try title, against Robert Hodge, the appellee, George W. Davis, and others, the defendants below, to recover the possession of one league of land, it being the northern league of the Chambers eight leagues in Ellis county, setting out the boundaries thereof, and claiming the title to and possession of the same on the 1st day of January, 1870, when defendants entered and took possession by force, dispossessing plaintiff, and continue to hold it from him.    Plaintiff filed amended petition January 13, 1872, making other parties in possession defendants; and filed also a supplemental petition August 1, 1872, making Ellen H. Thompkins, who was also a claimant, a party defendant.

The appellee, who was one of the defendants below, filed his answer January 5, 1872, and three amended answers, (one May 20, 1874, one January 2, 1875, and one January 2, 1875,) presenting: 1st. General denial, and plea of not guilty.    2d. A plea of the statute of limitations of ten years.    3d. Of five

years.  4th. Of three years.  5th. A superior title in defend-
ant, specially deraigning his title, viz., grant to T. J. Cham-
bers; conveyance from said Chambers to E. J. Lewis; from
her to Ellen Cornell; from her to M. F. R. L. Cornell; from
her to John P. Watson; from him to Joshua James; from
him to T. H. McCray; from him to the Telico Manufacturing
Company; from judgment against said company, sale there-
under, and sheriff's deed to defendant Davis.  6th. Limita-
tion of four years against the purchase-money owing by T. H.
McCray to Joshua James.  7th. Payment of the purchase-
money owing by McCray to said James.

The plaintiff joined issue with said defendant Davis, reply-
ing: 1st. A denial of the allegations generally.  2d. That
the purchase-money and obligations named in the deed from
Joshua James to T. H. McCray, through whom defendant
Davis claimed title, had never been paid; that an express
mortgage lien had been retained in the deed to secure the
payment of said purchase-money; that McCray and his vend-
ees having failed to pay the purchase-money, said James, hold-
ing the superior title, had conveyed said title to Mathews,
and he to the plaintiff.

The appellant Hodge, who was defendant below, pleaded
not guilty.

The intervenor, L. D. James, set up a claim of title to one-
half of said land, as heir of his mother, Mary K. James, de-
ceased, who was the wife of Joshua James, in the State of
Louisiana, charging that John P. Watson held said land in
trust for said Mary K. James; that she was the equitable
owner thereof; that by a decree of the District Court in the
parish of Madison, Louisiana, it was decreed that said Watson
should make the title to all lands in the State of Texas held
by him in trust to her, which included the land in contro-
versy; and that the plaintiffs were purchasers with full no-
tice, &c.

The plaintiff Roosevelt replied to this, first, by a general de-
nial; second, charging that Mary K. James and Joshua James

30

were man and wife, and that the deeds operate an estoppel against intervenor; and third, that Mary K. James died, leaving three children; and claiming that in any event plaintiff should recover one-half the land, and the interest of Joshua James and C. L. James, as heirs of their brother, &c.

A jury was waived, and the cause submitted to the court. Judgment was rendered for the defendant George W. Davis, from which the plaintiff Roosevelt, the defendant Hodge, and the intervenor James appealed.

*J. W. Ferris,* for appellant Roosevelt.

I. A special mortgage lien having been retained in the deed from Joshua James to T. H. McCray, under whom the appellee Davis claims, to secure the payment of the notes given for the purchase-money, and the notes not having been paid, the title to the land remained in Joshua James; and as he, after default in payment, conveyed the land to Oliver Mathews, and he to the appellant Roosevelt, said appellant holds the better title; and it was error to decree the land to the appellee. (Dunlap *v.* Wright, 11 Tex., 603; Baker *v.* Ramey, 27 Tex., 59; Caldwell *v.* Fraim, 32 Tex., 326; Peters *v.* Clements, 46 Tex., 115; Ballard *v.* Anderson, 18 Tex., 385; Baker *v.* Clipper, 26 Tex., 629; Monroe *v.* Buchanan, 27 Tex., 245; Robertson *v.* Paul, 16 Tex., 476.)

II. Although the notes may be barred by the statute, it is no bar to the recovery of the land, on default of payment of the purchase-money. (Dunlap *v.* Wright, 11 Tex., 604; Baker *v.* Ramey, 27 Tex., 59.)

III. Plaintiff's cause of action would not be barred under ten years after default by the vendee; and in computing the time, the period from the 28th day of January, 1861, until the 30th of March, 1870, must be excluded.

This suit was brought December 13, 1871. The last installment became due, on the sale from James to McCray, April 8, 1859. Deduct the period of suspension of the statute during the war, and less than four years had run against

plaintiffs when this suit was brought.  (Const. 1869; Walker *v.* Emerson, 20 Tex., 711.)

IV.  The possession was not adverse until Joshua James had repudiated his contract with McCray, by executing the mortgage deed to Mathews in 1866, and until the statute of limitations began to run, March 30, 1870.  The possession was under and consistent with the Watson title.  (Browning *v.* Estes, 3 Tex., 476 , Keys *v.* Mason, 44 Tex., 144; Walker *v.* Lawler, 45 Tex., 538; Burr. Law Dict., 61, and cases cited; 2 Smith's Lead. Cases, 416—notes, 396; Zeller's Lessee *v.* Eckert *et al.*, 4 How., 289; Burhans *v.* Van Zandt, 7 Barb., 92, 100; 5 Cow., 74, 92, 99, 484; 16 Johns., 301; 1 Johns., 157; Adams' Eject., 57.)

V.  The presumption of payment of the purchase-money is overcome by producing the notes, and it is also overcome by proof of the insolvency of the obligor, McCray.  (1 Phill. Ev., 193, note; 11 Ves., 266; Boardman *v.* De Forest, 5 Conn., 1; Daggett *v.* Tallman, 8 Conn., 168.)

VI.  The presumption of payment from the statute of limitation may be also overcome by the existence of the war; and the period of the late civil war is judicially known.  (Jackson *v.* Pierce, 10 Johns., 414; Brewton *v.* Connor, 1 Bay., 482.)

VII.  The defendant Davis is not an innocent purchaser without notice.  He is bound by the recitals of the deed from Joshua James to T. H. McCray, through which he claims title, (Peters *v.* Clements, 46 Tex., 123,) and the record of said deed was notice.

VIII.  The defendant Davis claiming his title under McCray, he held the land subject to, and in subordination to the better title of Joshua James, and which better title the said James has conveyed to appellant Roosevelt; and as defendant Davis got possession on faith of this contract, he cannot claim to hold adversely to plaintiff, certainly, without giving notice.  (Keys *v.* Mason, 44 Tex., 140.)

IX.  Joshua James having conveyed the land by general

warranty deed to Mathews, and he by general warranty deed to appellant Roosevelt, this appellant is subrogated to all the rights of Joshua James. (Peters *v.* Clements, 46 Tex., 115.)

X. The appellee Davis holding a quit-claim title under McCray, has only such interest as McCray had, which is an equity—a right to the land on payment of the purchase-money; and as he refuses to pay the purchase-money, he cannot recover.

*Kendall & Bradshaw*, for appellee.

I. We assert that one in possession of lands, holding under a deed, cannot be evicted at the suit of a remote vendor whose purchase-money remains unpaid, although that remote vendor may have given only a bond for title. (Dunlap *v.* Wright, 11 Tex., 597; Robertson *v.* Paul, 16 Tex., 472; Ballard *v.* Anderson, 18 Tex., 384; 1 Hill. on Mortgages, 136, and authorities cited; Monroe *v.* Buchanan, 27 Tex., 241; Caldwell *v.* Fraim, 32 Tex., 310; Browning *v.* Estes, 3 Tex., 462; Scarborough *v.* Arrant, 25 Tex., 131; Walker *v.* Emerson, 20 Tex., 706; Secrest *v.* Jones, 21 Tex., 132; Fisher *v.* Foote, 25 Tex. Supp., 311; Bradshaw *v.* House, 43 Tex., 146; McAlpin *v.* Burnett, 19 Tex., 500; Colquitt *v.* Thomas, 8 Ga., 258.)

II. The second or third vendee holds a stronger position than the first vendee, as against the original vendor; and the only remedy as to such remote vendor is by suit to foreclose and sell to pay purchase-money.

III. One holding from a vendee who holds under a deed registered, is protected under our statutes of limitation against the remote vendor; and such possession after registration of any deed subsequent to the original vendor's deed, is adverse *prima facie.* (Winburn *v.* Cochran, 9 Tex., 123; Tinnin *v.* Mebane, 10 Tex., 253; De Cordova *v.* Smith, 9 Tex., 150; Robertson *v.* Wood, 15 Tex., 1; Burdett *v.* Silsbee, 15 Tex., 604; Vardeman *v.* Lewis, 17 Tex., 10; Newsom *v.* Davis, 20 Tex., 419; Harris *v.* Hardeman, 27 Tex., 249; Wright *v.* Dai-

ley, 26 Tex., 731; Mason v. McLaughlin, 16 Tex., 29; Turner v. Smith, 11 Tex., 620.)

IV. The vendee of a remote vendor cannot maintain a suit of "trespass to try title" against another vendee of the remote vendor; but the remedy is, first, a suit to cancel, in which the notes must be brought in, and an offer made to cancel; or, second, a suit on the notes. And in either event, the maker of the notes is a necessary party. (See authorities above cited.)

As to the claim of appellant Hodge, the testimony shows that Hodge knew of the sale of the land by James, not only by the record of the deeds, but by actual notice, and of the adverse possession of the land for some thirteen years before his (Hodge's) purchase from James. (Watkins v. Edwards, 23 Tex., 443; Mann v. Falcon, 25 Tex., 274.)

Hodge was not an innocent purchaser; but even if he had been, the title he purchased was barred at the time he came into court and asserted it.

As to the claim of the intervenor, L. D. James, we maintain that the Louisiana court had no authority to decree title to land in Texas. (See Story on Confl. of Laws, secs. 538, 543, 609; Watkins v. Holman, 16 Peters, (U. S.,) 57.)

Nor did the decree purport to pass title to the land. It only ordered Watson to do so; besides, the decree did not identify this land.

*Winkler & Morris*, for appellants Robert Hodge and L. D. James.

Roberts, Chief Justice.—It is agreed that the legal title to the league of land in controversy was in John P. Watson on the 13th day of November, 1850, and all of the parties, except the intervenor, claim title by conveyances traced back to him.

Roosevelt, the plaintiff below, claims title by and through a warranty deed from Watson to Joshua James, dated November 2, 1859, in the usual form: by a mortgage executed

by Joshua James and his wife Mary K. James, on the 6th of March, 1866, to Oliver Mathews, to secure a debt due to him from C. L. James, the son of Joshua and Mary K. James; by a deed executed by Joshua and C. L. James September 1, 1868, witnessed by intervenor L. D. James, another son, in satisfaction of the mortgage debt, Mary K. James having died in the meantime, after date of the mortgage and before that of this deed, leaving surviving her husband and said two sons, and another son, who afterwards died, without wife or issue surviving him; by warranty deed from said Matthews to Roosevelt, 31st October, 1868. This is a regular chain of the legal title, unless it is broken as to a part interest claimed by L. D. James, intervenor, through his mother, as hereafter shown. These deeds were all recorded before the trial, and the mortgage was recorded in 1866.

The claim of title of the defendant below, George W. Davis, is by a deed executed by Joshua James, with warranty, on the 21st of June, 1856, (before he got a deed from Watson,) to T. H. McCray, for and in consideration of a draft (that was protested) for $516.60, and three notes, (one for $4,669.44, due 8th of April, 1857; one for $5,000.37, due 8th of April, 1858; and one for $5,341.30, due 8th of April, 1859,) in which deed it is recited that said Joshua James "herein reserves a special mortgage and lien upon the land conveyed, to secure the payment of the foregoing described notes," said deed being recorded June 21, 1856, the same day it was executed; by a quit-claim deed from T. H. McCray to the Telico Manufacturing Company, July 10, 1857; by a judgment against said company, execution, and sheriff's sale, and purchase for $200 by George W. Davis on the 1st of March, 1859; and by possession of T. H. McCray, of the said company, and of Davis, respectively, from the 21st of June, 1856, to the date of this suit, 13th of December, 1871.

The claim of title of Hodge, one of the defendants below and one of the appellants, is by a quit-claim deed from Watson to him, dated in 1870, who, it is contended by plaintiff

Roosevelt, bought with actual and constructive notice of the plaintiff's title; and Davis being in possession under deeds recorded, he must have had notice of his claim. Hodge's right might, therefore, depend upon the defect and failure of their titles.

The claim of title of L. D. James is by inheritance of an undivided interest in the land from his deceased mother and brother; by a judgment in the State of Louisiana, decreeing that Watson should "transfer and reconvey to the said Mary K. James all the land and real estate in said deed in trust, or acquired in his trust capacity, in the States of Louisiana and Texas," referring to property adjudged to have been held in trust by Watson for her under an agreement in 1848; the death of his mother in 1867, after the execution of the mortgage by her and her husband to Mathews, and before the execution of the deed to Mathews by his father and brother; and by the death of his brother, J. W. James, without wife or issue surviving him, after the death of his mother.

The plaintiff contends that this decree, being rendered in Louisiana, could not of itself operate to affect the title to the land in Texas without the execution of a conveyance by Watson to her, in pursuance to the direction of the decree; that the deed from Watson to Joshua James, reciting that it was executed in conformity with said decree, would not give notice of the decree being, as it was, in favor of Mary K. James; and that she having joined with her husband in the execution of the mortgage to Mathews in 1866 for this land, after the deed from Watson to her husband, and she in the mortgage having expressly relinquished her interest in the land, which was perfected by subsequent deed of Joshua and C. L. James, and witnessed by the intervenor, and, further, it being recited in said mortgage executed by her that the deed was executed from Watson to Joshua James in 1859, thereby showing her knowledge and recognition of the condition of the title of said land, the intervenor was estopped by her acts and acquiescence from claiming any interest in the land through her.

The cause having been submitted to the court without a jury, a judgment was rendered in favor of Davis, the defendant, thereby establishing his title to the land as superior to that of his co-defendant Hodge, to that of the intervenor L. D. James, and to that of the plaintiff Roosevelt.

Although Joshua James had no title to the land when he executed the warranty deed to T. H. McCray in 1856, still, having obtained the title from Watson by deed executed in 1859, McCray may be said to have had thereby fully such title to the land as was conveyed to him by his deed, from its date, in 1856.

That deed, containing an express reservation of a lien on the land for the payment of the purchase-money, had the effect to make the perfection of his title dependent upon the payment of the purchase-money, and the notes given for it were, with the respective dates of their maturity, recited in the deed. Until said payment, the superior right to the land remained in Joshua James, so far as that deed was concerned. (Baker *v.* Ramey, 27 Tex., 59; Peters *v.* Clements, 46 Tex., 115.)

There is no evidence tending to show that McCray, or any one else for him, ever paid any part of these notes. Two of the notes were not due at the date of his sale of the land to the Telico Manufacturing Company, on the 10th of July, 1857; and the possession of the notes by plaintiff's counsel on the trial was consistent with the fact that they had not been paid.

One of the notes was still due when Davis bought the land at the sheriff's sale on the 1st of March, 1859. The deed from Joshua James to T. H. McCray being on record from its date in 1856, gave to the Telico Company and to Davis notice of the express lien reserved, and of the date of the maturity of the notes; and the Telico Company having received a quit-claim deed, and Davis having bought only such interest as the company had, Davis must be held to have taken and held the land in subordination to, and not ad-

versely to, the superior title of Joshua James, until James conveyed it by mortgage recorded to Mathews in 1866, which is the first fact tending to show a repudiation of the relations previously existing between the parties, created by the deeds, transmitting the rights in the land from one to the other of these respective parties.

And until a manifest repudiation of such relation by James, or by McCray, or by the Telico Company, or by Davis, the notes being unpaid, the statute of limitations would not commence to run, either against the notes, so as to defeat James' right to recover the land by his superior title, or to run by possession of three, five, or ten years, as against his superior title to the land.    (Keys *v.* Mason, 44 Tex., 144 ; Browning *v.* Estes, 11 Tex., 237 ; Robertson *v.* Wood, 15 Tex., 4.)

There is no evidence of any such repudiation previous to that time, and from that time there could be no bar of plaintiff's action to recover the land when the suit was brought in 1871, under our Constitution and statutes.

As the case is presented in the record before us, the plaintiff appears to have the superior legal title as against the defendant Davis, and that, therefore, the judgment in favor of Davis is erroneous.

As to the title of the intervenor, if he is not estopped, which question we do not decide, the title set up by him relates only to a part interest in the land, that does not entirely defeat the right of plaintiff to recover as against Davis, the defendant.

As the facts may be presented differently upon another trial as to the intervenor, and as to Hodge, the defendant, and also as to defendant Davis, it is not deemed necessary to further discuss the matters involved in this case.

Judgment reversed and cause remanded.

REVERSED AND REMANDED.