## HENRY FLEMING v. THE STATE.

### No. 4074. Decided October 14, 1908.

**1.—Murder—Charge of Court—Manslaughter—Charge as Entirety.**

Where upon trial for murder the court in one portion of his charge instructed the jury upon the question of manslaughter that the provocation constituting adequate cause must arise at the time of the killing; and in a preceding charge instructed the jury that in the consideration of such provocation at the time of the killing it was their duty in determining the adequacy of the provocation to consider in connection therein all the facts and circumstances in evidence, the charge upon the whole was sufficient.

**2.—Same—Evidence—Bill of Exceptions.**

Where upon trial for murder the alleged rejected testimony appearing in defendant's bill of exceptions appeared in the statement of facts, and besides was not a matter of sufficient importance to justify a reversal, there was no error.

**3.—Same—Evidence—Deadly Weapon.**

Where upon trial for murder the knife with which the defendant killed the deceased was identified by the State's witness, and it was certain that the deceased was killed by a knife at the hands of the defendant; testimony with reference to the size of said knife by way of comparison, could not have injured the rights of the defendant.

**4.—Same—Evidence—Res Gestae.**

Where upon trial for murder a State's witness testified that deceased immediately after being stabbed called out or said, "Get me a doctor," there was no error, as this was res gestae, and also confirmatory of witness' statement as to the details of the transaction.

**5.—Same—Newly Discovered Evidence—Want of Diligence.**

Where upon a motion for a new trial after a conviction of murder the alleged newly discovered evidence appeared probably untrue; that the same in the nature of things could not change the result; that there was a want of sufficient diligence on the part of the defendant to procure this testimony, there was no error in overruling the motion upon this ground.

**6.—Same—Sufficiency of Evidence.**

Where upon an appeal from a conviction of murder in the second degree the testimony of the State negatived the contention of the defendant as to self-defense, and showed a case of a wanton and unprovoked murder, the conviction was sustained.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. W. W. Nelms.

Appeal from a conviction of murder in the second degree; penalty, sixteen years imprisonment in the penitentiary.

The opinion states the case.

*Crawford & Crawford,* for appellant.—On the question of the court's charge on manslaughter: Miles v. State, 18 Texas Crim. App., 156; Wadlington v. State, 19 Texas Crim. App., 266; Johnson v. State, 22 Texas Crim. App., 206; Howard v. State, 23 Texas Crim. App., 265; Bonnard v. State, 25 Texas Crim. App., 173; Oram v. State, 24 Texas Crim. App., 495; Hawthorne v. State, 28 Texas Crim. App., 212; Cochran v. State, 28 Texas Crim. App., 422;

Bonner v. State, 29 Texas Crim. App., 223; Bracken v. State, 29 Texas Crim. App., 362. On question of newly discovered evidence: Taylor v. State, 39 S. W. Rep., 372; Lincecum v. State, 29 Texas Crim. App., 328; Sebastian v. State, 39 S. W. Rep., 680; Hart v. State, 21 Texas Crim. Rep., 163; 17 S. W. Rep., 421; Lindley v. State, 11 Texas Crim. App., 283. On question of testimony with reference to size of knife, etc.: Crook v. State, 27 Texas Crim. Rep., 198; 11 S. W. Rep., 444.

*Brockman, Kahn & Newman* and *E. T. Branch,* for appellant.— On question of newly discovered evidence: Harris v. State, 17 Texas Crim. App., 559; Moore v. State, 18 Texas Crim. App., 212; Sneed v. State, 18 Texas Ct. Rep., 820; Lawhorn v. State, 46 Texas Crim. Rep., 555; 81 S. W. Rep., 714; Baines v. State, 42 Texas Crim. Rep., 510; Simmons v. State, 26 Texas Crim. App., 14.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was indicted in the District Court of Dallas County charged with the murder of one C. Hardy by stabbing him with a knife. He was brought to trial at the January Term, 1908, of the Criminal District Court of said county and on such trial was convicted of murder in the second degree and his punishment assessed at sixteen years confinement in the penitentiary. He now comes, by appeal, to this court and seeks a reversal of the judgment of conviction on several grounds.

The testimony shows beyond doubt that appellant did strike, wound and kill C. Hardy on the 18th day of October, 1907, at a negro dancing hall, or saloon and bawdy house in what is known as the "South End" in the City of Dallas. The State's testimony tended strongly to show that the killing was substantially unprovoked and indicates a condition of affairs that would well have justified a conviction of murder in the first degree and a much severer punishment than the jury assessed against him. The appellant, by his testimony, not only raises the issue of manslaughter, as we believe, but also, if accredited, makes a strong case of self-defense. In view of the surroundings of the killing, we do not deem it necessary to go into details of the facts further than to state our conclusions, as we have done.

1. The court charged on all degrees of murder and also gave a charge on self-defense. The charge considered altogether is an admirable presentation of the law, and in the motion for a new trial and the brief of counsel, only one complaint is leveled against it, and that is with reference to the charge of the court on the subject of manslaughter. The portion of the charge complained of by appellant is as follows:

"If you believe from the evidence beyond a reasonable doubt that the defendant killed the said C. Hardy, but you further believe from the evidence that at the time of such killing the deceased struck the defendant with his fist and you further believe that such blow, considered in connection with all the other facts and circumstances of the transaction, created in the mind of the defendant such a degree of anger, rage, sudden resentment or terror as to render him incapable of cool reflection, and acting under the influence of such passion the defendant stabbed and thereby killed the deceased, and you further do not believe that such killing was in defense of himself from an attack by deceased, reasonably producing a rational expectation or fear of death or serious bodily injury, if you so believe beyond a reasonable doubt, you will convict the defendant of manslaughter." Complaint is made of this charge on the ground, as claimed, that it limits the provocation to the acts of the deceased occurring at the time of the killing and it is claimed that in no other part of the charge does the court apply the law to the facts as shown by the evidence adduced at the trial of the case. This complaint by counsel for appellant is made in view of a showing made in the testimony that a short time before the fatal meeting, deceased had made two attacks upon the appellant which were unprovoked and outrageous in their character, and that the charge, therefore, is erroneous in that it excluded from the jury the consideration of these previous matters as affecting the state of mind of appellant at the very time of the killing. The principle and rule asserted by appellant is well settled in this State, Miles v. State, 18 Texas Crim. App., 156. But we think that considering the charge altogether that it does not contravene the rule contended for by appellant and stated above. Preceding the portion of the charge of the court complained of and directly in connection therewith, the court, as part of the law of manslaughter, charged the jury as follows:

"In order to reduce a voluntary homicide to the grade of manslaughter, it is necessary not only that adequate cause existed to produce the state of mind referred to, that is, of anger, rage, sudden resentment or terror, sufficient to render it incapable of cool reflection, but also that such state of mind did actually exist at the time of the commission of the offense.

"Although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is your duty in determining the adequacy of the provocation (if any) to consider in connection therewith, all the facts and circumstances in evidence in the case, and if you find that by reason thereof, the defendant's mind at the time of the killing was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind, in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the re-

quirements of the law, and so in this case you will consider all the facts and circumstances in evidence in determining the condition of the defendant's mind at the time of the alleged killing, and the adequacy of the cause (if any) producing such condition." Considered altogether, we think the charge of the court on the subject of manslaughter is not subject to any substantial criticism and that this assignment should, therefore, be overruled.

2. Complaint is made that the court erred in excluding certain testimony proposed to be given by one Chester Walker, a witness for appellant. The bill recites that in response to questions of counsel for appellant, the witness Walker had answered that he had proposed to go to "South End" and thereupon appellant's counsel asked the following question: "What happened then," and the witness answered, "He didn't want to go at first," to which answer the State objected and which objection was by the court sustained. It is contended by counsel that this testimony was relevant to the issue and was highly important to appellant as tending to show the condition of his mind. We note by an examination of the record, however, that this testimony appears in the statements of facts to have been given by the witness Walker. We note as follows: "I then proposed to go to 'South End;'" "He didn't want to go at first," using the identical language which it appears in the bill was excluded. We think, as presented here, we should not reverse the case for this action of the court; because we do not consider the matter of sufficient importance to justify a reversal.

3. Objection was made on the trial to the testimony of one T. A. Tedford, a witness for the State, who testified that Mr. Brown, a policeman, took the knife off of appellant and that he saw it at the City Hall and that the blade was about two or two and a half inches long. It seems also in this connection that the witness Tedford exhibited to the jury as a basis of comparison a knife similar to the one spoken of by him in his previous testimony. This knife, it should be stated, was well identified by the policeman Brown, who gave testimony substantially similar to that of Tedford, as to the size of the knife. It is certain that the deceased was killed by a knife and at the hands of appellant. It does not seem that this testimony in any event was of a character to have seriously prejudiced appellant's cause.

4. Again, complaint is made of the admission of the testimony of Kittie May Brooks to the effect in substance, that deceased immediately after being stabbed called out or said, "Get me a doctor," and that he never said anything else after that time. This testimony was admissible, not only as part of the res gestae, but as a fact to be considered in connection with the other circumstances of the case, as confirmatory of the statement of this witness as to the details of the tragedy and her presence and familiarity therewith.

5. In his motion for new trial appellant strongly urged that

a new trial be granted him because of the newly discovered testimony of one Will Turner, whose affidavit was attached to the motion. It is stated in the affidavit of Turner that his home originally was in Austin; that he has lived in San Antonio, Texas, and has resided at different times in Dallas, Texas; that for the past four and a half months he had resided in South McAlester, State of Oklahoma, and that he has been back in Dallas about a week; that he knew deceased, got acquainted with him in what is known as "South End" of Dallas and that he saw him on the night he was killed; that on this night he had been down in and around "South End" and in and around "Big Four" some hour or more before the killing occurred; that he was not acquainted with Fleming nor did he know Chester Walker; he says that he has heard the names called and understands that Henry Fleming is the boy charged with the killing of Hardy; that on the night of the killing he was standing talking in the dance hall near the parlor door when some one came into the dance hall and deceased made the remark, "There comes the son-of-a-bitch and I am going out there and fix him;" that after this remark was made he and Brit Harris walked into the saloon and that while he and Harris were in the saloon he heard somebody had been cut and he went out there and saw that deceased had been injured; that there was a large crowd gathered around, but he did not know how badly Hardy was cut; that shortly after that he left the place and has made South McAlester his home ever since until he returned to Dallas about a week ago, when he heard that Henry Fleming had been convicted for the killing; that since the killing he has not talked to anyone about what he knew about the case until after he returned to Dallas and the case was mentioned when he told what he knew about the trouble.

It will be noticed that this witness does not claim to have been present at the very time of the killing, or to know anything about or concerning it, except the single remark testified to by him. It is singular that he seems not to have been observed in or about the hall where he says he stayed for quite awhile, by any other witness, nor does he claim to have known appellant or any of the women in or about the place and none of them seems to have known him. He does not state, it will be observed, in his affidavit how long at that time he had been in Dallas, where he was engaged at work, or how long he stayed. He does not give the name of a single person living in Dallas who knew him or whom he knew, except deceased, who had been killed, and Harris, who is unaccounted for. We think if he was present, and especially if he had been in and about the saloon for an hour or more, that some person or persons, who are accustomed to be in and about that place—the proprietor or proprietress, servants or employes—would or must in the nature of things, have known it, and that proper diligence would

have discovered his presence and further diligence would have led to some inquiry as to what, if anything, he knew about the facts.

It will be noticed that he makes a statement about the matter which no one else gives and, which, if it had occurred, must probably have been known to some one else. Our own judgment is that it is doubtful as to his being in Dallas or having any acquaintance with the facts. We think it reasonably certain that this testimony to this isolated instance, could not, in the nature of things, change the result. We think his testimony probably, if not certainly, untrue. A fair degree of diligence must in every case rest upon litigants to prepare their case for trial. There should be and must be at some time an end of litigation. We do not believe that for this testimony of a stranger "passing in the night," we should undo the work of a trial where apparently the case was fully developed and where every right under the law was accorded to appellant.

6. It is insisted again that the verdict of the jury is contrary to and unsupported by the testimony. We can not accede to this contention. Appellant's testimony, indeed, as well as that of Chester Walker did raise the issue of self-defense. The testimony of the State directly negatived and disputed this contention and showed a case of wanton and unprovoked murder. It was essentially a fact case. The jury passed on the contentions of appellant adverse to his claim and testimony and we should be wholly without justification to in any way interfere.

Finding no error in the judgment of conviction, it is ordered that the judgment of the court below be and it is hereby in all things affirmed.

*Affirmed.*

[Rehearing denied.—Reporter.]