ROBINSON et al. v. MONNING DRY GOODS CO. (No. 1529.)

(Court of Civil Appeals of Texas. Amarillo. April 23, 1919.)

1. JUDGMENT ⬚497(2)—COLLATERAL ATTACK —RECITATION AS TO SERVICE.

Under Rev. St. arts. 5205, 7506, a judgment reciting that service was had on "defendant" showed sufficiently that service was had on two defendants for the purpose of a collateral attack; it appearing that the defendants were throughout the judgment referred to in the singular.

2. EXECUTION ⬚221—SALE—TIME.

A sale of land under an execution made after time for return as fixed in the process was void.

3. JUDGMENT ⬚18(2)—PLEADING TO SUSTAIN —SUFFICIENCY.

In action by third person to enjoin sale of land under execution, court did not have jurisdiction to order sale of the property in satisfaction of costs incurred in the injunction suit and of the judgment under which the execution had been rendered, in the absence of pleadings that would authorize the entry of such a judgment.

4. DEEDS ⬚179, 181, 182—LOSS OR DESTRUCTION—EFFECT.

The destruction or loss of a deed or its redelivery to the grantor does not divest legal title in the grantee or revest it in the grantor, unless equity so demands.

5. BILLS AND NOTES ⬚527(1)—VENDOR'S LIEN NOTES—PAYMENT—EVIDENCE.

Where a deed recited that grantee was to assume the payment of vendor's lien notes, and release filed recited that the grantee had paid such notes, such instruments were prima facie evidence that grantee paid such notes.

6. ESTOPPEL ⬚74(2)—LOST INSTRUMENT.

Where a grantee of land reconveyed and his grantor lost the deed and thereafter had the grantee convey the property to a third person, who assumed to pay vendor's lien notes, the original vendor was estopped from setting up the lost deed in an action by the last grantee to try title; the lost deed having been treated by the parties as never having existed.

7. EXECUTION ⬚263—SALES OF LAND—TITLE OF PURCHASER.

Purchaser of land at an execution sale could get no better title than the judgment debtor had.

Appeal from District Court, Lynn County; W. R. Spencer, Judge.

Trespass to try title by Mrs. E. J. C. Robinson and another against the Monning Dry Goods Company. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

H. C. Randolph, of Plainview, and Bean & Klett, of Lubbock, for appellants.

G. E. Lockhart, of Tahoka, and W. R. Spencer, of Lubbock, for appellee.

BOYCE, J. This suit was brought by appellant, Mrs. Robinson, joined by her husband, against appellee, the Monning Dry Goods Company, in trespass to try title to certain lots in the town of Tahoka, in Lynn county. The appellant appeals from a judgment for the defendant in said cause.

Both parties claim under Jack Alley, and the appellee in addition claims that, if he has not acquired title from Jack Alley, then the title to said property is still outstanding in him, and the appellant as plaintiff in the trespass to try title suit is not entitled to recover. The claims of said parties are based on the following facts: On June 1, 1910, Jack Alley conveyed the property to T. M. Bartley, retaining a vendor's lien to secure the payment of four notes for $300 each, executed by Bartley. On December 20, 1912, said Bartley reconveyed the premises to Jack Alley, the deed reciting the assumption by the said Alley of payment of the above-described notes. This deed was never recorded, and was lost. On March 16, 1917, the said Bartley, at the request of the said Alley and upon representations by him that the deed from Bartley to Alley had never been recorded and that he was in doubt as to whether such deed had been given, conveyed the property to Mrs. Robinson, Alley's stepdaughter, upon a recited consideration of $10 and other valuable considerations, including the assumption of the payment of the vendor's lien notes executed by Bartley, already referred to. On March 16, 1917, Alley executed a release of said vendor's lien, reciting the payment of said notes by the said Mrs. Robinson. Bartley paid no consideration for the conveyance except the execution and delivery of the notes recited in the deed, and received nothing himself in the transaction; "the papers were executed [by him] as an accommodation to Alley." Alley occupied the premises for some time after the conveyance to Bartley, and after he vacated they were rented and the rents collected by Mrs. Robinson, who paid them to Alley until the conveyance of the property to her, and who thereafter retained the rents herself. The Monning Dry Goods Company, on March 9, 1911, secured judgment by default in the county court of Tarrant county

against Jack Alley individually and Jack Alley Company, a corporation. This judgment recited that the *defendant*, though duly cited, came not, etc. Following this recitation the court found that *"defendant*, Jack Alley Company, a corporation, and Jack Alley as an individual, jointly and severally, are justly indebted to plaintiff," and then adjudged that the plaintiff "do have and recover of and from defendant, Jack Alley Company, a corporation and Jack Alley as an individual, jointly and severally its juagment," etc. The citation in the case did not show service on the Jack Alley Company. An alias execution directed to Lynn county was issued on this judgment on April 18, 1917, returnable in 90 days. This execution was levied on the lots in question on the 24th day of May, and the property advertised for sale on the 3d day of July, 1917. On the 3d day of July, 1917, and before the sale was made, the sheriff was restrained from selling said property by a writ of injunction issued out of the district court of Lynn county, in cause No. 312, wherein Mrs. Robinson was plaintiff and the sheriff was defendant. The defendant in said cause answered by a plea in abatement that Mrs. Robinson was not joined in said suit by her husband, and also by general exception and general denial. On September 5, 1917, the court sustained said plea in abatement, and dismissed said cause and dissolved said temporary injunction. This judgment also contained the following, after reciting the issuance of the temporary injunction restraining the sale of said property on the 3d day of July:

"It is therefore ordered by the court that the clerk of this court issue a writ of venditioni exponas, commanding him, the said F. E. Redwine, to proceed to sell the above-described property as under execution to satisfy said judgment (the judgment rendered in the county court of Tarrant county) interest and costs, as well as the costs incurred in this cause."

The property was thereafter sold by the sheriff of Lynn county on the 6th day of November, 1917, and was bought in by and deeded to the Monning Dry Goods Company. The return of the sheriff on the execution from the county court of Tarrant county set out all these facts, reciting that the venditioni exponas had been issued out of the district court of Lynn county, and had been returned to said court, though the venditioni exponas and return thereon were not offered in evidence, the only evidence as to the issuance of the venditioni exponas and return thereof being the sheriff's return on the execution from the county court of Tarrant county, reciting the facts as we have stated them.

[1] By the first five assignments it is variously asserted that the Tarrant county judgment was not final, because Jack Alley Company had not been cited in said cause. We may dispose of these assignments by the statement that in our opinion the judgment is to be construed as reciting service on the defendants, Jack Alley Company and Jack Alley, against whom judgment was rendered and that such recital is final on this collateral attack. Hopkins v. Cain, 143 S. W. 1145. While the recital of service refers to the *defendant* without further description, it appears that the defendants were throughout the judgment referred to in the singular, and in two specific instances both Jack Alley Company and Jack Alley were referred to as the defendant. In legal construction the singular is frequently held to embrace the plural where that appears to be the fair meaning of the writing (Elliott on Contracts, § 1535; R. S. arts. 5205, 7506); and we think this judgment is to be construed as reciting service on the defendants against whom it proceeded to pronounce its judgment.

[2, 3] The sixth, seventh, and eighth assignments attack the sale because not made within the 90 days provided for the return of the execution issued out of the county court of Tarrant county, and because the judgment of the district court of Lynn county, directing the sale of the said property under a venditioni exponas or order of sale issued out of the said court, was void, as not being within the jurisdiction of the court. We think these assignments are well taken. A sale made after time for return as fixed in the process is, in Texas, void. Hester v. Duprey, 46 Tex. 625; Mitchell v. Ireland, 54 Tex. 306; Young v. Smith, 23 Tex. 598, 76 Am. Dec. 81; Freeman on Executions, § 58. Some authorities hold that the time during which proceedings are stayed by injunction should not be estimated in computing the time for the return of the process (Freeman on Executions, § 353, citing Ansonia B. & C. Co. v. Connor, 67 How. Prac. 157, 103 N. Y. 502, 9 N. E. 238), but this is denied by other authorities (Launtz v. Gross, 16 Ill. App. 329; 21 Century Digest, "Executions," § 1003; R. C. L. vol. 10, p. 1260). But it is not necessary to announce a conclusion as to this particular question because, even if the time during which the injunction was in force be taken out, yet the sale was not made within the 90 days for return of the execution. We think that the judgment in cause No. 312, in so far as it attempted to order the sale of the property on process issued out of that court in satisfaction of the costs incurred in that case and of the judgment rendered in the county court of Tarrant county, was without the jurisdiction of the court. There was no pleading that would authorize the entry of any such judgment. Hart v. Hunter, 52 Tex. Civ. App. 75, 114 S. W. 883, section 5 of syllabus; H. E. & W. T. v. Skeeter Bros., 44 Tex. Civ. App. 105, 98 S. W. 1064; Sandoval v. Rosser, 26 S. W. 930; Dunlap v. Southerlin, 63 Tex.

38. The creation of a lien on this property and the ordering of the sale thereof were matters wholly disconnected with any issues involved in the injunction suit, and such action was, in our opinion, beyond any jurisdiction acquired by said court in such proceeding. McNally v. Haynes, 59 Tex. 585; Withers v. Patterson, 27 Tex. 495–502, 86 Am. Dec. 643.

[4-7] It will thus be seen that the defendant failed to establish any title from Jack Alley in itself, and we may dispose of the remaining assignments by a consideration of the question as to whether the appellant, plaintiff in the court below, showed title in herself. A decision of this question depends on the effect to be given the conveyance from Bartley to Alley, and the attempt of the parties to treat this as never having been executed. The conveyance to Alley vested the title in him; and, as there was no conveyance from him to Mrs. Robinson, she is confronted by the statute of frauds in her attempt to show acquisition of this title in the manner detailed. Our courts have a number of times reaffirmed the general rule that—

"The destruction or loss of a deed or its redelivery to the grantor does not divest legal title of the grantee or revest it in the grantor." Galbraith v. Templeton, 20 Tex. 48; Van Hook v. Simmons, 25 Tex. Supp. 324, 78 Am. Dec. 573; Sanborn v. Murphy, 86 Tex. 437, 25 S. W. 612; Stanley v. Epperson, 45 Tex. 654; Dykis v. Hart, 2 Tex. Civ. App. 354, 21 S. W. 299.

But these decisions also recognize that:

"There are exceptions to this rule, even at common law, and it may be defeated by considerations or claims of equity."

The cases of Stanley v. Epperson, 45 Tex. 654, and Dycus v. Hart, 2 Tex. Civ. App. 354, 21 S. W. 299, illustrate and apply the exception, while the other cases illustrate and apply the general rule. The authorities are not entirely agreed in the statement of the exceptions and the legal reasoning on which they are based. Devlin on Deeds (3d Ed.), §§ 300–306a; Brown on Statute of Frauds (5th Ed.) §§ 60, 61; Russell v. Meyer, 7 N. D. 335, 75 N. W. 262, 47 L. R. A. 637, and authorities referred to in these citations. The deduction to be drawn from the expressions of the Texas cases on the subject is that one holding the property, under the grantor of the deed that has been redelivered, canceled, or destroyed, if he has any equities, will be protected against a claimant under the deed that was treated by the parties as having been canceled, on the ground that such claimant is estopped from setting up, or claiming under such deed. In the case of Van Hook v. Simmons, supra, there was merely an agreement to destroy the deed, though the court went further and announced that if the deed had been destroyed the grantor would not be protected. This holding can only be reconciled with the principles announced in the other cases on the ground that he had no equities, since he paid nothing on the faith of the arrangement. The redelivery of a contract for conveyance in the case of Sanborn v. Murphy, supra, was held not to constitute a cancellation of the said contract on the negative answer to the preliminary question, stated by the court thus:

"Are there any 'considerations or claims of equity' in this case that will take it out of the general rule?"

In the case of Stanley v. Epperson, supra, where Stanley conveyed the property to Henderson, who sold to Epperson, for a valuable consideration, but instead of executing his own deed to Epperson, with the consent of all parties, the grantee's name in the Stanley deed was erased and the name of Epperson written therein, and the said Epperson sued Stanley for the land, the court held:

"While it is true the altered deed of itself cannot be held to be either the deed of Stanley and wife to Epperson, or a deed from Henderson to him, yet the facts show that it would operate as a fraud upon appellee to permit Henderson, in whom the title was vested, to deny that it has been thereby conveyed to appellee. He is therefore estopped from doing so. Commonwealth v. Dudley, 10 Mass. 403. * * * And certainly a stranger cannot make for him, or in his name, a defense or claim which he has not made, and which he would not be permitted to make if he was a party to the suit."

The Massachusetts case above cited is very similar in its facts to the case at bar. In the present case Mrs. Robinson, in the conveyance to her, assumed to pay the four notes for $300 each, payable to Alley, and the release from Alley recites that she paid these notes. This is prima facie evidence of this fact, and there was no evidence to the contrary. Under such circumstances Alley would be, we think, estopped from setting up the deed from Bartley to him, which was represented as being lost and treated by the parties as never having existed. So that, even if the execution sale had been regular, the purchaser thereat could get no better title than the said Alley had at the time of the levy, which was after the conveyance to Mrs. Robinson. Under this state of facts we think that the judgment should have been for the plaintiff. As the record suggests that the facts as to the equities of the appellant may not have been fully developed, we will not render the judgment, but will remand the case for a new trial.

Reversed and remanded.