WALLS et al. v. CRUSE.    (No. 515.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 17, 1919. On Motion for Rehearing, Jan. 9, 1920.)

1. VENDOR AND PURCHASER ☞93, 257—DEED RESERVING LIEN AN EXECUTORY CONTRACT AND NOT CONVEYANCE; NONPAYMENT OF PRICE AUTHORIZES RESCISSION.

A general warranty deed for a stated consideration, one-half paid in cash and the balance evidenced by a note and retaining a vendor's lien therein for the enforcement of such balance, is an executory contract under which superior legal title remained in the vendor, and vendee's refusal to pay the unpaid purchase price authorized vendor to claim an immediate rescission of the contract and recover the land.

2. VENDOR AND PURCHASER ☞95(1), 101— SUIT TO FORECLOSE VENDOR'S LIEN NOT WAIVER OF RIGHT TO RESCIND.

While filing of suit to foreclose vendor's lien might extend time to pay the debt, it did not waive vendor's right to rescind or destroy his legal title, though subsequent rescission should be on demand and notice.

3. VENDOR AND PURCHASER ☞101 — NOTICE OF RESCISSION NOT NECESSARY WHERE RESCISSION IS BY AGREEMENT.

The requirement of notice as condition precedent to rescission is fully met, where the parties agree to the recission and to a sale of the land by vendor to another.

4. VENDOR AND PURCHASER ☞101 — ORAL AGREEMENT TO RESCIND ADMISSIBLE TO SHOW NOTICE OF RESCISSION THOUGH NOT COMPETENT TO SHOW TITLE.

In an action by a purchaser claiming the land against vendor's subsequent grantee, in which the defense was that the first sale had been rescinded, evidence that after the vendor had brought suit to foreclose lien of the first sale the parties agreed it should be rescinded and the title revested in vendor that he might sell to defendant, while incompetent to prove vendor's title, was competent as affecting notice of alleged rescission.

5. VENDOR AND PURCHASER ☞85 — RESCISSION SHOWN, THE TITLE RE-ESTABLISHED IN VENDOR.

Facts held to show that vendor, who had commenced proceeding to foreclose lien, subsequently rescinded the sale by agreement with vendee, thus dispensing with notice and demand, re-establishing title in vendor, so that subsequent conveyance to defendant was valid.

On Motion for Rehearing.

6. APPEAL AND ERROR ☞833(5)—DISCOURTEOUSLY EXPRESSED MOTION FOR REHEARING STRICKEN AND DISMISSED.

Motion for rehearing couched in disrespectful and discourteous language will be stricken from the record and files and dismissed.

Appeal from District Court, Tyler County; D. F. Singleton, Judge.

Action by Maggie Walls and others against R. A. Cruse. From a judgment for defendant, plaintiffs appeal. Affirmed.

See, also, 185 S. W. 1033.

J. E. Wheat, of Woodville, and Collins & Morris, of Beaumont, for appellants.

J. A. Mooney, of Woodville, and Greer & Nall, of Beaumont, for appellee.

BROOKE, J. This case was tried upon plaintiffs' second amended original petition, containing the usual allegations of trespass to try title. In addition to such allegations, plaintiffs alleged that on June 9, 1883, Mary S. Cobb sold to their ancestor, Thomas Walls, the land sued for in consideration of $125 cash and $125 due January 1, 1884, bearing interest at 7 per cent. per annum; that prior to January 26, 1884, there was paid $114 on this note, leaving a balance of $11 with 7 per cent. interest thereon from that date, making now due $43.47.

Plaintiffs also allege an agreement to cut the timber from the land and the consideration that was to be paid therefor and the amount that was to be deposited in the Tyler County Bank pending the suit. They also tendered defendant $43.47 in their pleadings, being the balance which they alleged was now due upon the vendor's lien note mentioned in their pleadings.

The defendant filed a general demurrer and some special exceptions to plaintiffs' petition, general denial, and plea of not guilty, and specially pleaded the two, four, and ten years' statutes of limitation, and then made special answer to the following effect, to wit:

That in February, 1881, Mary S. Cobb owned 300 acres of the Lucas survey which she mortgaged to John Cruse to secure a note for $177.18, bearing 12 per cent. interest, which mortgage was recorded in the deed of trust records of Tyler county, Tex., and was a valid lien on the land in 1883, when Mary S. Cobb made the deed to Thomas Walls conveying him a part of said tract. That the defendant R. A. Cruse purchased from the said John Cruse the Mary S. Cobb note and lien, and, at or about the time of the sale from Mary S. Cobb to Thomas Walls, Thomas Walls knew of this lien on the land, and he and Mary S. Cobb agreed that Mary S. Cobb would deliver to defendant the vendor's lien note which Thomas Walls gave her, which defendant would hold as collateral security for the John Cruse note, and as Thomas Walls paid the vendor's lien note the amounts were to be credited on the John Cruse debt. That subsequent to the execution of the deed from Mary S. Cobb to Thomas Walls, Thomas Walls purchased from defendant ma-

terial to build a house, and thereby became indebted to defendant in an additional sum of $318.22, evidenced by note dated March 28, 1885.

That in 1887, defendant desiring to collect the collateral note given him by Mary S. Cobb and also the note for $318.22, placed both notes in the hands of his attorneys for collection. That it was subsequently agreed between Mary S. Cobb and Thomas Walls that for the purposes of settling the indebtedness due defendant the land would revert to Mary S. Cobb, and she could convey the same to defendant. That she was then the owner of the vendor's lien note which Thomas Walls had given her, all of which had not been paid, which note she had left with defendant for collection. That, in pursuance with said agreement, Thomas Walls abandoned the land and Mary S. Cobb, who was then Mary S. Davis, conveyed the land to defendant. That Thomas Walls abandoned the land and his contract of purchase and permitted the same to be dealt with in pursuance with the agreement with Mary S. Cobb, and in carrying out said agreement defendant never further attempted to collect the balance of the vendor's lien note, the balance due on the John Cruse note, nor the note for $318.22 which Thomas Walls had given him for lumber to erect improvements on said property. That Thomas Walls ceased to claim said land about 1889, and at that time the same was worth about $1 per acre, and since said time defendant has paid taxes on said land and has had possession of the same, and all of the indebtedness evidenced by each and all of the notes has long since become barred by limitation, and the said land has increased in value and is now worth considerably more than it was at the time of the transaction above mentioned. Defendant also alleged that the indebtedness evidenced by the John Cruse note and the note for $318.22, which were intended to be paid by said land being delivered to defendant, if not so paid, would now amount to about $950, which sum should be paid defendant by plaintiffs before being permitted to recover said land.

Plaintiffs filed their supplemental petition, excepting to practically each and all of the paragraphs of defendant's answer, consisting of 19 exceptions.

The case was tried by the court without a jury, and judgment rendered for the defendant.

Plaintiffs offered in evidence deed from J. H. Frazier to Mary S. Cobb; deed from Mary S. Cobb to Thomas Walls; deed from Mary S. Davis, formerly Mary S. Cobb, and husband, Munroe Davis, to R. A. Cruse; petition in suit of R. A. Cruse v. Thomas Walls; judgment of the court dismissing this suit; deed from Mary S. Cobb to Thomas Baker. They proved by the witness N. A. Cobb that Thomas Walls built a house on the middle

217 S.W.—16

100 acres of the Lucas league. Mrs. Luce testified that she was 27 years old; that Thomas Walls was her father; that he died March 19, 1911; that he was married twice; that both wives were dead; that her mother died April 30, 1901; that he had two children by his first wife and six by his second wife; and that Thomas Walls did not leave a will that she knew of. Miss Maggie Walls, another daughter of Thomas Walls, testified that she was 23 years of age, and substantially to the same facts as her sister.

The defendant, R. A. Cruse, testified that he was 70 years old and lived in Tyler county all of his life; that about 1883 he purchased from his father, John Cruse, a note for $177.18, executed by Mary S. Cobb and secured by a lien on 300 acres of the Lucas league in Tyler county, Tex.; that, at the time Mary S. Cobb sold her land to Thomas Walls and Baker, witness agreed with Miss Cobb to purchase the note for $177.18 from his father, and at that time he was not holding the vendor's lien note which Walls gave Miss Cobb, but later took the vendor's lien note for collection; that Miss Cobb and Walls came to him to get him to take up the John Cruse note and hold it against the land until it was paid; that when Walls paid the note for $125 which he gave Miss Cobb, which she left with the witness for collection, the proceeds were to be applied on the John Cruse note; and that he was a witness to such an agreement between Miss Cobb and Thomas Walls; that at the time witness filed the suit against Thomas Walls to collect the balance due on the $125 note which Walls gave Mary S. Cobb, and which she left with him for collection, he was trying to collect the balance due so as to apply the proceeds on the John Cruse debt; that Thomas Walls also gave him a note for $318.22, dated March 28, 1885, on the bottom of which is indorsed in pencil: "Can take the land he purchased from Cruse for note."

This witness further testified that there was an agreement between Miss Cobb and Thomas Walls in which it was agreed that she had a perfect right to reconvey the land to witness with the consent of Thomas Walls in lieu of foreclosure under the John Cruse deed of trust; that she did later reconvey the land to witness, as the pencil notation on the note for $318.22 shows; that from about the time of this notation there was an agreement between Mary S. Cobb and Thomas Walls, in which she could take the land back for the balance due on the vendor's lien note and use it to pay the balance on the John Cruse debt which witness held; that the witness paid taxes on the land and had possession of it since that time; that he took charge of the buildings on the land; that Thomas Walls never lived on the place from the time the witness took it, and everybody knew that it belonged to the witness; that

he paid taxes on the land from that time and looked after the place himself, and that he does not remember what year the house burned, but it was a long time afterwards; that Walls left the country along about 1889, and he was in Polk or Angelina county the last time the witness heard of him; that there was not another word said after he consented for the witness to take the land, and that Thomas Walls never made any claim to the land and never occupied the same since it was turned over to the witness; that the land was worth about $1 or $2.50 per acre at the time, and has increased in value, and at the time suit was brought it was worth six times as much as when Thomas Walls turned it over to him; the suit was filed in 1913; that after the agreement between Miss Cobb and Walls, under which the land was later deeded to the witness by Mary S. Cobb, who was then Mary S. Davis, no effort was made to collect the Thomas Walls note for $318.22 from him or his heirs; that no effort was made to collect the $125 vendor's lien note which Thomas Walls gave Miss Cobb and which she left with the witness for collection and on which he then sued; that the mother of the plaintiffs never came back to the land, and he never did see her; and that she and Thomas Walls were not man and wife at that time.

The defendant introduced in evidence the John Cruse note and lien; also, deed from Mrs. Davis, formerly Miss Cobb, joined by her husband, Munroe Davis, to R. A. Cruse.

N. A. Cobb, witness for the defendant, testified: That he was acquainted with Thomas Walls. That he talked with him the morning he left Tyler county and made his final departure. That he stayed at their house the night before he left. That the father of the witness asked Walls, "What are you going to do with this tract of land you purchased from Mary Cobb?" and Walls said: "I am going to turn it over to R. A. Cruse. I owe him, and I am going to turn it over to him." That the witness had only seen him once since, and he asked the witness if Cruse had sold this tract of land, and that that was in 1894 or 1895. "My father asked him as he took him to the train that morning, 'What are you going to do with your land?' 'I am going to let Mr. Cruse take it and go to the bad place with it,' he said. Mary Cobb at that time was not married, but later married A. M. Davis. Walls cleared 10 or 12 acres of the land and built a house on it, but he did not live in the house that I know of."

On cross-examination the witness testified:

"Yes, that is what he said. said he was going to turn it over to Cruse. The way it came up was, my father and him had a spat that morning over a two months' board bill, and father asked him what he was going to do with the land, and he said, 'I am going to let Mr. Cruse take the land and go to hell,' I'll tell you just exactly what he said, since you have asked me again. I don't know where he went, but the next time I saw him he was in Corrigan, in 1893 or 1894, and he asked me if R. A. Cruse had sold the land he bought from Mary S. Cobb, my sister. Walls was not married at that time and was not married to the mother of these children. He stayed with Mrs. Baker, but he never did live in the house he built on the land he got from Mary S. Cobb, that I know anything of."

Plaintiffs introduced an agreement entered into between plaintiffs and defendant in this suit, to the effect that defendant could sell the timber on the land in controversy and pay into the Tyler County Bank $111, to be paid over to the successful party to this suit. With reference to this agreement, J. E. Wheat, one of the attorneys for plaintiff, testified that he signed the agreement with Mr. Mooney, one of the attorneys for the defendant; that, after they found the court papers in the case of Cruse v. Walls, they prepared an amended petition; that the reason they made the agreement was that they did not know anything had been paid on the note until August, 1917.

By their trial petition filed February 24, 1919, appellants sought to recover in trespass to try title against appellee, a tract of 100 acres of land in Tyler county.

From the evidence adduced we find that John H. Frazier conveyed to Mary S. Cobb, on January 20, 1881, by general warranty deed, a tract of land containing 300 acres including the land in controversy, and after that date Mary S. Cobb was the owner of said land holding the same in fee simple, and on February 19, 1881, Mary S. Cobb gave to John Cruse a deed of trust on the same land to secure an indebtedness to him of $177.18, evidenced by a note payable to him of that date signed by Mary S. and E. C. Cobb, bearing interest from its date, and this note was afterwards sold by John Cruse to the appellee herein. On June 9, 1883, Mary S. Cobb, by general warranty deed, conveyed to Thomas Walls (who is the ancestor of appellants herein, and whose property they at his death inherited) the land in controversy, the consideration being $250, one-half of which was paid in cash, and $125 was evidenced by a note payable January 1, 1884, bearing interest after maturity and to secure this note, which was payable to Mary S. Cobb, the vendor's lien was retained in said conveyance. This vendor's lien note has never been fully paid; the vendor's lien in the deed has never been released, and, subsequent to the purchase by Walls of the property, he purchased lumber from appellee and built a house on the property and gave to appellee his note in the sum of $318.22 therefor. At the time Walls purchased the 100 acres in controversy from Cobb, Cobb gave to appellee the note executed by Walls to her for $125 to be collect-

ed by appellee and applied as a credit on the note held by appellee at that time against her, secured by deed of trust on the whole property, for said sum of $177.18.

Appellee filed suit in the district court of Tyler county on December 29, 1887, against Mary 'S. Cobb and Thomas Walls on the $125 note given by Walls to Cobb alleging a payment on the said note on January 26, 1884, of $114, and seeking a foreclosure on the land in controversy for the balance due. This suit was continued from time to time on the docket, and finally on January 28, 1908, was dismissed at the cost of the plaintiff. The facts bringing about the dismissal of the case were that after it was filed and while pending it was agreed between appellee, Walls, and Cobb, that the land purchased by Walls from Cobb should revert to her, and she should convey the same by virtue of her ownership of the superior title to the appellee, and in carrying out this agreement the case was dismissed, and Mary S. Davis, joined by her husband, she being formerly Mary S. Cobb, conveyed the land to appellee by deed recorded February 3, 1908, in which deed it was recited that she had rescinded her contract of sale with Walls and by virtue of her ownership of the superior title she made the conveyance to appellee in consideration of the sum of $500. Walls left the county about 1889, surrendered possession of the land at that time to Cobb, and after leaving Tyler asked about appellee and the land, wanting to know if appellee had sold the land. At the time the land was deeded by Mary S. Davis, formerly Cobb, to appellee, Walls was indebted to appellee in the sum of $318 and interest, and in addition thereto appellee held a mortgage on the property for the original sum of $177.18, both of which items of indebtedness were, however, barred by limitation. No conclusions of law and fact were filed by the trial judge.

### Opinion.

. [1] The deed from Mary S. Cobb to Thomas Walls in 1883, reserving a lien for the unpaid purchase money, is an executory contract under which the superior legal title remained in the vendor, and when the vendee refused to pay the unpaid purchase price this refusal authorized the vendor to claim an immediate rescission of the contract and recover the land. Lanier v. Foust & Douglass, 81 Tex. 186, 16 S. W. 994; Thompson v. Robinson, 93 Tex. 165, 54 S. W. 243, 77 Am. St. Rep. 843; Roosevelt v. Davis, 49 Tex. 472; Crafts v. Daugherty, 69 Tex. 480, 6 S. W. 850; Woodward v. Ross, 153 S. W. 160; Loan & Trust Co. v. Beckley, 93 Tex. 267, 54 S. W. 1027.

[2, 3] The filing of the suit to foreclose the lien on the land in controversy by appellee operated as an extension of time to the vendee to pay the debt; but it did not amount to a permanent waiver of the legal right to rescind the contract, or destroy the superior legal title remaining in the vendor. Equity would require, however, in view of this action on the part of the holder of the note, that notice be thereafter given to the vendee that performance would be demanded within a given time, and that, upon failure to perform, rescission of the contract would be had and the holder of the superior title would resume possession and ownership of the land. This notice is fully met in this case by the vendee and vendor both agreeing to the rescission and the sale of the land by the vendor to appellee.

[4] The agreement verbally made between the parties that the title should revert to the vendor Cobb did not operate as a conveyance to her or put title in her upon the well-established principle that the title to corporeal interests in land must pass by writing, and verbal sales even when accompanied by redelivery of the title deeds would not operate to revest the land in the grantor. Sanborn v. Murphy, 86 Tex. 437, 25 S. W. 612; Robinson v. Monning Dry Goods Co., 211 S. W. 537. The pleadings and proof made along this line was not for the purpose of passing title, but to show notice of the rescission of the contract on the part of the vendor after suit had been brought against the vendee and thereby comply with the rule announced in Thompson v. Robinson, supra. It is for this reason that the assignments of error urged in this court to the action of the trial court in overruling special exceptions and admitting testimony are not well taken.

[5] It is our opinion that the facts of this case show a right existing in Mary S. Cobb to rescind the executory contract of sale evidenced by her deed to Thomas Walls upon reasonable and fair notice to Walls of such intention on her part; and that the agreement on the part of Walls that she might rescind and convey the land to appellee and the subsequent conduct of the parties is equivalent to such notice and fully meets all equitable requirements in this case; and that the deed to appellee made by Mary S. Cobb after her marriage, joined by her husband, and made after her rescission of the contract with Walls, and after the parties had agreed upon the course to be pursued and in conformity with such agreement, passed and vested the full legal and equitable title to the lands in controversy in appellee, and the trial court was correct in so concluding.

From what we have said a further discussion of the various assignments of error is unnecessary, and, there appearing no error in the record, the judgment should be in all things affirmed.

### On Motion for Rehearing.

HIGHTOWER, C. J. At a former day of this term, the judgment of the trial court in

this cause was affirmed, and the opinion of this court to that effect was filed on December 17, 1919.

[6] Appellants, on December 31, 1919, through their counsel, filed their motion for a rehearing. Upon inspection of this motion we find that it is couched in language and terms highly disrespectful and discourteous to this court, and we have therefore declined to consider or act upon such motion any further than to order it stricken from the files and record in this case. Such a paper has no proper place in the record before this court, and we feel that the conduct of counsel who are responsible for its filing is far beneath them, and would really warrant more drastic action at the hands of this court.

It is ordered that the motion for rehearing be stricken from the record and files in this cause, and dismissed.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes